JOHN A. MASON and others *vs.* ALEXANDER W. POULSON, Adm'r c. t. a. of JOHN MASON, deceased.

*Issues from the Orphans' Court on a Caveat to a Will—Relevancy of Testimony—Effect of Caveators offering in Evidence the will, with the order of probate and affidavit touching the probate attached, upon the Admissibility of the probate and affidavit in evidence, they being Irrelevant to the issues—Effect of Evidence improperly admitted, removed by a subsequent instruction to the jury—Admissibility of Secondary Proof of statements of an Administrator under Act of 1864, ch. 109, sec. 4—Practice of the Courts in regard to instructing Juries in that particular items of proof, or testimony of particular witnesses, are evidence.*

In a trial at law of issues from the Orphans' Court, where the questions at issue, were, 1st. whether a paper writing conceded to have been admitted to probate by the Orphans' Court, was the complete, and final last will, and testament of the deceased, and "intended by him to operate as such without any addition, alteration or alterations," and 2nd. whether, if at the time said paper was written by the testator, he intended to complete the same by subsequently adding anything thereto, he subsequently abandoned such intention, and recognized, and adopted, the said paper as his last will in its present shape, it was HELD:

1st. That it was error in the Court below, to permit the order admitting the will to probate, to be read to the jury.

2nd. That upon the issues presented, evidence that the paper had been admitted to probate was wholly irrelevant.

3rd. That the fact, that the said order of probate formed part of the proceedings of the Orphans' Court, accompanying the issues sent down for trial, did not authorize it to be used as evidence before the jury, on the trial of such issues.

4th. That it was impossible to say that the said order had no influence upon the verdict.

5th. That this difficulty was not removed by the fact that the original will, (to which the probate and affidavits, upon which it was in part founded,) was submitted by the caveators to the inspection of the jury. They not having offered the probate or affidavits in evidence or attached them to the paper, or asked the jury to inspect them, and it not appearing that the jury did so.

6th. That it was also error in the Court below, to permit one of the affidavits to be read to the Court in the presence of the jury, but that whatever effect this proceeding may have had upon the jury, prejudicial to the caveators, was removed by the granting of a prayer offered by them, by which the jury were instructed, that this affidavit was not evidence in the cause proper to be considered by them as proof of any fact therein sworn to.

7th. That the testimony of certain witnesses to the effect, that the administrator *c. t. a.* and caveatee, after he became such administrator, had told them that the testator had said to him in conversation, that it was not his intention, that this paper, should operate as his will, offered as testimony in chief by the caveators, was hearsay and inadmissible.

8th. That the rule, that the acts, and admissions of a party to the record are evidence, even although he be but a trustee for another, provided they be made, and done after he is clothed with the office, or has acquired the interest considered with reference to the nature and character of the declarations proposed to be offered, their relevancy to the issue on trial, as well as the scope and purpose of the issue itself, is not applicable to this case.

9th. That the declarations of the testator on the subject of his intention, in regard to his will were admissible in evidence in this case, but they must be proven by those who heard him make them, and not by proving that some one who heard them said he heard them, and its makes no difference whether such *say so* came from the administrator, or a party to the proceeding or not.

10th. That there was no error in the Court below in instructing the jury, that the alterations and additions, the intention to make which on the part of the testator, was submitted to them, were alterations in matters of substance, and not alterations or additions in the mere form of the instrument.

11th. That the issues from the Orphans' Court must be read and construed, as presenting to the jury, the question, whether there was an unexecuted intention to alter the paper, in such particulars as to prevent it from being admitted to probate as a will.

It is not the practice in this State for Courts to instruct juries, that particular items of proof, or the testimony of particular witnesses, *are evidence* of the facts they were offered and admitted as tending to prove.

Davis *vs.* Calvert, *et al.*, 5 *G & J.*, 269, distinguished from this case.

Mason, *et al. vs.* Poulson, Adm'r c. t. a.

APPEAL from the Superior Court of Baltimore City.

*First Exception.*—The plaintiffs to maintain the issues on their behalf offered in evidence the paper-writing in question purporting to be the last will of John Mason, with the affidavit and probate appended thereto, but did not read said affidavit and probate to the jury. Oral evidence was introduced on both sides, of which so much as was required to elucidate the questions involved in the case, is stated in the opinion of the Court.

The defendant then proposed to read to the Court and jury the probate of the Orphans' Court, contained in the record sent down with the issues, and likewise the evidence contained in said record, on which said probate was granted; which probate and evidence the plaintiffs had not read in offering their testimony.

The plaintiffs objected to the reading thereof, but the Court overruled said objection, and decided that the probate might be read to the Court, with the affidavit of Harman, to show that the Orphans' Court acted upon the evidence contained in said affidavit, although such reading was not necessary, the fact of the probate of the disputed paper having been admitted on both sides; but that the affidavit could not be read to the jury as competent evidence to them of any facts contained therein, and accordingly permitted said probate and affidavit to be read to the Court, in the presence of the jury, for the purpose only for which the Court had decided the reading thereof to be proper, and the probate without the affidavit, to be read to the jury, which was done. To the overruling of their objection, and to the decision of the Court, and permission to read the said probate to the Court as aforesaid, and to the reading thereof, the plaintiffs excepted.

*Second Exception.*—The plaintiffs prayed the Court to instruct the jury as follows:

1st. That if they believe from the evidence in the cause, that the paper-writing offered in evidence, which was ad-

mitted to probate by the Orphans' Court, was not intended by the alleged testator, John Mason, to operate as his complete and final last will and testament, but that he intended to alter the same, or to add thereto, their verdict must be for the plaintiffs on the first issue.

2nd. Even if they believe that the paper-writing offered in evidence, which was admitted to probate by the Orphans' Court, was intended by said Mason, when it was written, to operate as his last will and testament; yet if they believe that he afterwards desired and intended to alter the same, or add thereto, and did not, after so desiring and intending, adopt the same as his last will and testament, their verdict must be for the plaintiffs on the first issue.

3rd. That the jury must find for the plaintiffs on the first issue, unless they believe from the evidence, that the alleged testator, John Mason, intended and desired the paper-writing offered in evidence, which was admitted to probate by the Orphans' Court, to operate as his complete and final last will and testament, without alteration thereof, or addition thereto, and that he continued so to intend and desire, so long as he was possessed of sufficient mind to be capable of making a valid deed or contract.

4th. If they believe that John Mason, the alleged testator, intended to alter or add to the paper-writing offered in evidence, which was admitted to probate by the Orphans' Court, and was prevented from so doing by death, they must still find for the plaintiffs on the first issue, unless they believe that he abandoned said intention, and adopted said paper-writing as his complete and final last will and testament.

5th. That the affidavit of Hiram L. Harman attached to the paper-writing, which was admitted to probate by the Orphans' Court, is not evidence in this cause proper to be considered by the jury as proof of any fact therein sworn to.

6th. That if the jury believe from the evidence that the alleged testator, John Mason, had selected the defendant,

Alexander Poulson, as his executor, and continued so long as he was in condition to execute a valid deed or contract, to desire said Poulson to be his executor, then the paper which has been offered in evidence was not intended by him to operate as his complete and final last will and testament, without any addition or alteration, and the jury must find for the plaintiffs on the first issue.

7th. That the paper-writing offered in evidence, which was admitted to probate by the Orphans' Court, contains upon its face evidence that it was not intended by the said John Mason to operate as his complete and final last will and testament, without any addition, alteration or alterations.

8th. That if at the time the said paper was written by said John Mason, he intended to complete the same by subsequently adding anything thereto, there is no evidence that he subsequently abandoned said intention, and recognized and adopted said paper as his last will and testament in its present state, and the jury must therefore, find for the plaintiffs on the seventh issue.

9th. That if said John Mason intended to add to or alter said paper-writing, there is no evidence that he was prevented from carrying such intention into effect by sickness and death, and the jury must therefore find for the plaintiffs on the eighth issue.

The defendant offered four prayers, the second and third of which the Court refused; the first and fourth are as follows:

1st. The defendant prays the Court to instruct the jury, to exclude from its consideration as evidence in this cause, all those portions of the testimony of the witnesses, Watson, Mrs. Baptist and Geo. W. Baptist, in regard to statements made to them respectively by the defendant, about conversations which the defendant had with the deceased, John Mason, and about declarations of the said Mason to the defendant—such conversations and declarations so proved, being secondary or hearsay evidence.

4th. The defendant further prays the Court to instruct the jury that if they find that the paper-writing given in evidence, which was admitted to probate by the Orphans' Court as the will of John Mason, was entirely written by him in his own handwriting, and was carefully kept by him in a portfolio in his private drawer, where it was found at the time of his death; and shall also find that all the property mentioned in said will is leasehold or other personal property, and that said Mason had no real estate at the time it was written, or at the time of his death; and shall further find that the said Mason, when he was of sound and disposing mind, and capable of making a valid deed or contract, intended it to operate as his will in its present form, and so declared, and that said intention continued until his death, then the jury must find for the defendant on the first and seventh issues.

The Court (DOBBIN, J.,) granted the plaintiffs' first, second, third, fourth and fifth prayers, rejected their sixth as offered, but granted it with the following proviso: "Provided they shall find that he desired to carry such selection into effect by the execution of a new paper or the insertion of Poulson's name in this;" and rejected their seventh, eighth and ninth absolutely.

The Court granted the defendant's first prayer, the fourth being conceded, and gave the following additional instruction:

"That by the alterations or additions referred to in the instructions granted by the Court, is meant alterations or additions in the mere form of the instrument, and not in its substance."

To the rejection of their sixth, seventh, eighth and ninth prayers, and to the granting of the defendant's first prayer, and to the additional instruction given by the Court, and to the proviso appended to their sixth prayer, the plaintiffs excepted, and the verdict being against them, they took this appeal.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*R. F. Brent* and *John H. Thomas,* for the appellants.

*Arthur George Brown* and *Fred. W. Brune,* for the appellee.

MILLER, J., delivered the opinion of the Court.

A paper was admitted to probate by the Orphans' Court of Baltimore City, on the 30th of July, 1870, as the last will and testament of John Mason, and the appellee was appointed administrator of his estate *cum testamento annexo.* Subsequently on the 2nd of January, 1874, the appellants, the next of kin of the deceased, filed a *caveat* asking that probate of this paper be revoked, and that certain issues be sent to a Court of Law for trial. After answer by the appellee eight issues were by order of the Orphans' Court sent to the Superior Court of Baltimore City for trial. In the latter Court all the issues were withdrawn except the *first* and *seventh,* which are as follows:

1st. Is the paper writing purporting to be the last will and testament of John Mason, deceased, which was admitted to probate on the 30th of July, 1870, the complete and final last will and testament of said deceased, and was it intended by him to operate as such without any addition, alteration or alterations?

7th. Whether if at the time the paper aforesaid was written by the said Mason, he intended to complete the same by subsequently adding anything thereto, he subsequently abandoned such intention and recognized, and adopted the said paper as his last will in its present shape?

At the trial, exceptions were taken to several rulings of the Court, which this appeal presents for review. Two of them relate to the admissibility of evidence, and the

others to the prayers, and we shall dispose of them in their order.

1st. By a fair construction of the first exception we are of opinion it embraces the ruling allowing the order of probate to be read to the jury as evidence, as well as that permitting the probate and affidavit of Harman to be read to the Court in the presence of the jury. It appears that the substance of Harman's affidavit, to the effect that Mason shortly before his death showed him this paper and declared to him it was his will, was written out on the back of the paper itself when it was offered for probate, and that the same affidavit in full, with that of another witness and the probate order were on another piece of paper, which was attached in the usual way to the paper purporting to be the will.

The caveators offered in evidence the alleged will, but did not read in evidence these affidavits or probate. The caveatee then offered to read to the Court and jury both the order of probate and these affidavits. The caveators objected to the reading thereof, but the Court *overruled this objection,* and decided the probate might be read to the Court with the affidavit of Harman, to show that the Orphans' Court acted upon the evidence contained in that affidavit, although (as the exception states) such reading was not necessary, the fact of the probate of the disputed paper having been admitted on both sides, but that the affidavit could not be read to the jury as competent evidence to them of any facts contained therein, and accordingly permitted the probate and affidavit to be read to the Court *in the presence of the jury,* for the purpose only for which the Court had decided the reading thereof to be proper, and the probate without the affidavit to be read to the jury which was done. The caveators then excepted to the *overruling of their objection and* to the decision of the Court, and permission to read the said probate to the Court as aforesaid, and to the reading thereof. It thus appears

their objection included the reading of the order of probate
to the jury, that the Court overruled the objection, that
they excepted to this overruling, and that the order was in
fact read to the jury.    This seems fairly to present the
question whether there is error in this ruling, and we are
of opinion there is.    The fact of probate was not only con-
ceded on both sides, but admitted in express terms in the
issues themselves.    What the jury were to determine was,
whether this paper was the complete and final will of the
deceased, intended by him to operate as such in its present
shape without alteration or addition.    Upon this issue, evi-
dence that the paper had been admitted to probate, was
wholly irrelevant.    The question is very similar to that
presented in the case of *Brooke vs. Townshend*, 7 *Gill*,
26, where the issues assumed the *factum* of the will, and
the Court held that proof of its execution was an act of
supererogation, and that the evidence on that subject was
therefore to be treated as irrelevant, incompetent and
inadmissible.    The fact that this order formed part of the
proceedings of the Orphans' Court, accompanying the
issues sent down for trial, does not authorize it to be used
as evidence before the jury on the trial of such issues.
They were not required to try the issue of probate *vel
non*, and indeed no such issue could be submitted to them.
Whether the probate should stand or be revoked was a
matter to be determined by the Orphans' Court, upon sub-
sequent consideration of the findings of the jury on these
issues.    Nor can we say the admission of this evidence
did not prejudice the caveators.    The order was signed
by the three Judges of the Orphans' Court, and states
that the Court "after having carefully examined the
above last will," (this very paper,) "and also the evi-
dence adduced as to its validity," had ordered it to be
admitted to probate "as the true and genuine last will
and testament of the deceased."    Now much of the cavea-
tors' case rested upon the appearance of the paper itself,

the fact that it was not signed by the alleged testator though written by him, that it contained no clause appointing executors, though it directs funeral expenses to be paid by "my executors hereinafter named," its interlineations in pencil, and its condition of apparent mutilation by cutting. They had the right to rely upon this before the jury, upon the question of intention submitted to their finding. It is impossible for us to say this order had no influence upon their verdict, embodying as it does the opinion of judicial minds, professing to be formed in part from an inspection, and careful examination of the same instrument. It would naturally carry with it such influence, and that it was intended it should have this effect, by the caveatee who offered it, we have no doubt, for we can conceive of no other purpose for which he could have used it. Nor is this difficulty removed by the fact, appearing in the record, that the cross-examination of a witness was suspended for a time that the caveators might submit the original will, (to which the probate and affidavits were attached) to the inspection of the jury. They did not offer the probate and affidavits in evidence, nor attach them to the paper, nor ask the jury to inspect them, and it does not appear the jury did so. What they submitted and requested the jury to examine was the paper purporting to be the will. This ruling must therefore be reversed and a new trial of the issues awarded.

This exception also shows that the affidavit of Harman was read to the Court in the presence of the jury. It was certainly just as irrelevant to the trial of these issues, for the Court as for the jury, to know that the Orphans' Court had acted on the evidence contained in this affidavit, in admitting the paper to probate. But whatever effect this proceeding may have had upon the jury prejudicial to the caveators, it was removed by the granting of their fifth prayer, by which the jury were instructed that this affidavit was not evidence in the cause, proper to be considered by them as proof of any fact therein sworn to.

2nd. The testimony of certain witnesses to the effect that Poulson, the administrator *c. t. a.*, and caveatee, had told them that Mason had said to him in conversation, that it was not his intention that this paper should operate as his will, was offered (subject to exception,) as testimony in chief by the caveators. Subsequently the Court, by granting the caveatee's first prayer, excluded this testimony from the consideration of the jury as secondary or hearsay evidence. In this we discover no error. What Mason said in respect to this paper was undoubtedly evidence, and strong evidence under these issues, but we think there is no ground upon which the caveators can escape the necessity of proving it by those *who heard* Mason make the statements, or declare his intention on that subject. Proof by other witnesses that Poulson said, that Mason had said he did not intend this paper to be his will certainly comes within the rule so important, and well established which excludes hearsay evidence as totally inadmissible. The ground upon which counsel for the caveators contend for the admissibility of this testimony is, that it proves *admissions* made by Poulson, a party to the record, and after he became administrator with the will annexed. There can be no doubt of the correctness of the position, that the acts and admissions of a party to the record are evidence, although he be but a trustee for another, provided, they be made and done after he is clothed with the office, or has acquired the interest. The law regards such admissions as declarations by the party against his interest, at the time they were made and therefore probably true. This is a well settled rule of evidence and finds constant application in *nisi prius* trials, but like other similar rules, Courts in its application to particular cases, must consider the nature and character of the admissions proposed to be offered, their relevancy to the issue on trial, as well as the scope and purpose of the issue itself. So considered, our judgment is that the

declarations sought to be introduced in this case are not of the character to which the rule applies. The question presented by these issues and upon which the jury were to pass, is simply whether Mason's testamentary intent was finally expressed in the paper-writing before them. *His declarations* on the subject were evidence whether he so intended or the contrary. Such declarations either way must be proved by those who heard him make them, and not by proving that some one who heard them, said he heard them, and it makes no difference whether such *say so* came from the administrator or a party to the proceedings or not. Here Poulson himself was not only a competent witness, but actually testified in the cause as to what Mason did say to him on this subject. The caveators, themselves, could have placed him on the stand, and if his testimony was against them, could have rebutted it by opposing proof, or by his admissions proved by other witnesses. *Act of* 1864, *ch.* 109, *sec.* 4. Or they could, when examined, on his own offer, by appropriate questions on cross-examination, have laid the foundation for contradicting or impeaching him, and have used the testimony of their witnesses as to his declarations, for that purpose. Instead of adopting either of these modes, they offered this testimony as to what he said Mason had said on the subject, as direct and primary proof of the latter's intention respecting this paper. In our opinion, the Court below properly treated such testimony, as secondary or hearsay evidence. We have carefully examined the ruling in *Davis vs. Calvert, et al.,* 5 *G. & J.,* 306 *to* 308, chiefly relied on by the appellants' counsel, and, in our judgment, it is not, as they insist, a conclusive adjudication of the question before us. That case was a very peculiar and remarkable one. The issues presented, not only the question of testamentary capacity, but whether the alleged will had been procured by undue influence or by the fraud or misrepresentations of the caveatees, or either

of them.   The declaration of Calvert, the executor and one of the caveatees, which the Court there admitted, tended to prove the issue of fraud, and to show his participation therein.   The Court admitted it as a link in the chain of evidence on that subject.   This, we take it, is the ground upon which that ruling is placed, and what the Court said respecting the admissions of a party on the record being always admissible, and as not falling within the principle excluding hearsay testimony, is simply an enunciation of the general rule which they held applicable, on the ground above stated, to the admission they were then considering.   This is plainly apparent from what is said by the Court on page 308, viz:  "If the offer had been of evidence of an acknowledgment by *Calvert*, that he had forged the will or extorted it by threats or violence, there would have been no difficulty about it.   Here indeed the offer was of evidence of a circumstance only ; but though a mere circumstance it was *one tending to prove the issue of fraud*, and which, when connected with others might be found an important link in the chain."   The distinction between that case and the present is very obvious.   Here the issues are not only different but the proposed testimony is altogether of a different nature, and character.   The one falls strictly within the rule governing admissions as such, the other is purely secondary or hearsay evidence, and falls within the rule on that subject.

3rd.  Nor do we find any error justifying a reversal in the rulings excepted to upon the other prayers.

The first four instructions asked by the caveators, to the effect that if the jury believe from the evidence, that this paper was not intended by Mason as his complete and final will, but that he intended to make *alterations* or *additions* thereto, then they must find for the caveators on the first issue, the Court granted, with this modification, viz:  "that by the alterations or additions referred to in

the instructions granted by the Court, is meant alterations or additions in matters of substance, and not alterations or additions in the mere form of the instrument, and not in its substance." It is to be observed, that neither the instructions in their original shape, nor the Court's modification thereof, attempt to point out to the jury what particular alterations or additions would be in matters of substance, and not form, or *vice versa.* Nor does it appear by the record that any exception was taken at the trial to the modification on the ground that it submitted a question of law to the jury, and therefore no such objection can be raised in this Court. The general legal proposition embodied in this modified instruction, that the intent to add to, or alter such a paper in mere matters of form and not of substance, would not prevent it from operating as a will, was not denied in argument, and is unquestionably true. But it was said the modification altered indefinitely the issue to which the prayers referred, and, under it, the finding of the jury would be no answer to the question presented to them by the first issue. It is true by the literal reading of that issue the question is, whether the paper was intended by Mason to operate as his last will " without any addition, alteration or alterations," which would include alterations or additions in mere matters of form not affecting its validity as a will. But it would have been an idle and useless proceeding in the Orphans' Court to have ordered the trial of an issue of that character, and an equally useless waste of time in the Court of Law to try it. What it was important for the Orphans' Court to know, was, whether there was an unexecuted intention to alter it in such particulars as to prevent the paper from being admitted to probate as a will, and the issue must be read and construed as presenting that question to the jury. The Superior Court rightly so construed it, and there is no error in this modification open for revision by this Court.

By their sixth prayer the caveators asked the Court to instruct the jury, that if they believe from the evidence, that Mason had selected the caveatee, Poulson, as his executor, and continued so long as he was in condition to execute a valid deed or contract, *to desire* said Poulson to be his executor, then this paper was not intended by him to operate as his complete and final will and testament, without any addition or alteration, and they must find for the caveators on the first issue. This the Court refused as offered, but granted it with this proviso; "Provided they shall find that he desired to carry such selection into effect by the execution of a new paper, or the insertion of Poulson's name in this." In so modifying the paper the Court properly instructed the jury what *desire* to appoint an executor would, if unexecuted, render the paper inoperative as a will. If Mason merely had a desire that Poulson should be his executor, but was undetermined in his mind as to the manner in which that desire should be carried out, it would have no such effect. To render the paper inoperative as a will, on this ground, he must have desired to carry his selection into effect in one of the only modes in which he could have lawfully accomplished it, that is, by the execution of a new paper, appointing Poulson his executor, or by the insertion of his name in this. We discover no ground upon which this qualification or proviso is objectionable.

Their seventh prayer was rejected upon the grounds that it was unnecessary and calculated to mislead the jury. The paper was in evidence and inspected by the jury. Its condition and appearance were fair subjects of comment and argument before the jury upon the question of intent, and in this respect it does not appear the counsel for the caveators were in any manner restricted. But it was wholly unnecessary to ask a specific instruction that it bore on its face *evidence* that it was not intended by Mason to operate as his complete and final will. That it contained

such evidence was determined or conceded when it was admitted to go to the jury, and was allowed to be inspected by them.   Unless *conclusive* of the case, or of the question of intent, the Court was entirely right in refusing an instruction which would tend to impress the jury with the idea that *more importance* was to be attached to it than any other testimony on the same subject given in the cause. The importance, weight and bearing of this testimony, were matters to be left altogether to the argument of counsel.   It is not the practice in this State for Courts to instruct juries that particular items of proof, or the testimony of particular witnesses, *are evidence* of the facts they were offered and admitted as tending to prove, and it is no ground of complaint, if instructions to that effect are refused when asked for.

The Court also refused their eighth prayer to the effect that, if at the time he wrote the paper, Mason intended to complete it by subsequently adding anything thereto, then there is *no evidence* he subsequently abandoned that intention, and recognized and adopted the paper as his last will and testament in its present shape, and the jury must, therefore, find for the caveators on the seventh issue. Their second, third and fourth prayers, which the Court granted, at their instance, (with the modification above referred to,) concede there was some evidence before the jury on this subject.   But, apart from this, we have carefully examined the testimony contained in the record, to ascertain whether there was any evidence legally sufficient to authorize the jury to infer and find the abandonment and subsequent recognition and adoption referred to in this prayer, and are of opinion there was.   Among other things Poulson testified that shortly before his death Mason said to him, "that it *had been* his desire to insert in his will a legacy to his nephew (Rev. Mr. Baptiste,) but says he 'never mind I am *satisfied* with *it*, as *it* is.'"   We cannot say the jury might not properly have inferred that, in this

last expression, Mason referred to the alleged will, and not to the legacy. This instruction was therefore properly refused.

Their ninth prayer was properly rejected, because it was based upon an issue which had been withdrawn.

This disposes of all the rulings which the record presents for review. While upon all others there would be an affirmance, yet, as we have already said, for the fatal error in the ruling in the first exception, there must be a reversal and a new trial of the case.

*Ruling reversed, and*
*new trial awarded.*

(Decided 18th June, 1874.)

BARTOL, C. J., delivered the following dissenting opinion :

I concur in the opinion of my brothers in all respects, except upon the *first* bill of exceptions, and as to that, while I agree that the judgment of the Orphans' Court admitting the will to probate, was not legal, or proper evidence to be read to the jury, upon the issues before them, I do not think, under the circumstances, the ruling of the Superior Court as disclosed in the first bill of exceptions, furnishes any sufficient ground for reversal.

We all agree that the appellants are not entitled to a reversal, because the Court below allowed the counsel for the caveatee, to read the probate with the affidavit of Harman, *to the Court.* That was necessary to enable the Court to understand the question raised by the caveators' objection, and enable them to decide upon the appellee's offer ; which was an offer "to read to the Court and jury the probate of the Orphans' Court, and the evidence contained in the record, from that Court, on which the probate was granted." The Court refused to allow the affidavit to be read to the jury ; and afterwards by granting the appel-

Mason, *et al. vs.* Poulson, Adm'r c. t. a.

lants' *fifth* prayer, instructed them, "that the affidavit of Harman, attached to the paper, was not evidence in the cause proper to be considered, as proof of any fact therein sworn to."

The only error alleged in this bill of exceptions, is that the Superior Court permitted the *probate* to be read to the jury. I cannot perceive what possible harm could have been done to the appellants by this ruling. It is stated in this bill of exceptions "that *the fact of the probate of the disputed paper*, had been admitted on both sides." Such an admission imported that the judgment of the Orphans' Court had been passed in favor of the validity of the will. Reading to the jury the probate itself, was merely stating the same fact, in another form; and it seems to me could have had no effect whatever upon their verdict. It was immaterial to the issues, and although irregular, could do no harm to the appellants, of which they have a right to complain; or which ought to entitle them to claim a reversal. It appears that upon every material question involved, the ruling of the Superior Court was correct. The case was fairly submitted to the jury, upon instructions free from error; and I do not think their verdict ought to be disturbed, by reason of any thing contained in the first bill of exceptions.