MARY C. LUNGREN and MARSHALL SWARTZWELDER
vs. HARRY SWARTZWELDER and FRANKLIN A.
HEARD, Executors of PETER SWARTZWELDER.

*Question touching the Testamentary character of a paper—Animus Testandi.*

A paper was found in a safe at the store of a deceased person, in a pocket book, with some notes and certificates of bank and other stocks. The heading of the paper was, "Hagerstown August 11th 1875—what I *owen* is as follows." Beneath followed a list of his houses and stock, and memoranda of sums to be paid to various persons, out of the sales of certain of his houses, the whole concluding as follows: "I appoint for my *administreatirs* H. W. of *Cunbeirland, Mayland,* and F. A. H. of Hagerstown, Maryland," (Signed) "P. S." The paper was proven to have been written and signed by the deceased, and there was nothing to show that it was not signed on the day of its date. He died on the 14th of December, 1875, aged about seventy-two years. As regards his mental and bodily condition, there was no proof tending to show that he was prevented by sudden sickness, or anything which the law would pronounce an act of God, from perfecting it, or executing a formal will, for more than three months after the date of the paper. HELD:

1st. That the paper could not be upheld as a will on the ground that its perfection was prevented by the act of God.

2nd. That the place of its deposit, and the care with which it was kept, were merely circumstances to be considered and weighed with all the other facts of the case, in solving the question whether the party intended it as his will or not.

3rd. That in the absence of proof to the contrary, it must be assumed the paper was written and signed on the day of its date.

4th. That the paper in itself contained no indication that the writer intended it should be, and wrote it for his last will and testament, and in the absence of evidence of some acts or declarations clearly showing that he intended the paper as it stood, to be his will, or subsequently recognized or adopted it as such, it could not be admitted to probate.

5th. That the evidence in this case disclosed no such intention or subsequent recognition or adoption.

6th. That in order to ascertain whether the last clause in the paper was operative as a valid appointment of the persons there named as his executors, it was necessary to look to the entire paper treating it as a whole, and to all the acts and declarations of the writer relating to it.

7th. That doing so in this case, there was nothing to warrant the Court in separating this part of the paper from those parts which preceded it, or to justify the conclusion that the writer wrote this part with, and the others without the *animus testandi.*

APPEAL from the Orphans' Court of Washington County.

The appeal in this case was taken from an order of the Court below, dismissing a caveat filed to the probate of a paper offered as the last will and testament of Peter Swartzwelder, and affirming the order previously passed admitting said paper to probate.

The facts of the case are sufficiently stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*Z. S. Claggett* and *William T. Hamilton,* for the appellants.

The question to be determined is, did the deceased intend the paper as his will in its present form and condition? "To constitute a good will of personal property, the paper must be either complete on its face, or it must appear, if incomplete or defective, that it was intended by the testator that it should operate as his will in its unfinished and imperfect state, or that he was prevented from completing the contemplated formalities by being overtaken by sickness or death, or some other casualty." *Plater vs. Groome,* 3 *Md.,* 134.

" It must appear that the deceased possessed the *animus testandi at the time it was written,* and that he intended

the paper, as it stood, to be his will, without looking to anything further to be done, in order to perfect it." If he did not intend it, in its present form, to operate as his will, then it is not a good and valid will of personal property. *Tilghman vs. Stewart*, 4 *H. & J.*, 156 and 173; *Boofter vs. Rogers*, 9 *Gill*, 46 and 53; *Barnes vs. Syester*, 14 *Md.*, 507, 527 and 529; *Harris vs. Pue*, 39 *Md.*, 535 and 548.

The paper is incomplete and unfinished in that it does not dispose of his whole property, and does not name the residuary legatee. In the case of *Harris vs. Pue*, 39 *Md.*, 548 and 549, the paper was signed by the testator and declared to be his will. A duplicate was prepared at his request and signed by him, and delivered into the custody of the legatee, with the injunction, "to take care of that will." Besides, it disposed of his entire property, and named the residuary legatee.

It is a noticeable fact, that this paper is not endorsed as his will, nor is it recognized or referred to as his will. The word will occurs but once in the paper, viz., "My houses to be sold, and the proceeds paid over to the respective parties named in my will." He does not say, the proceeds paid over to the respective parties named in *this my will*, but evidently referred to his will thereafter to be made, completed and finished.

Again he directs payments of the bequests to be made out of his real estate. It is virtually a devise of the realty. The personalty is exempted from the payment of the legacies, and he confers no power to sell his real estate upon his alleged executors. This indicates the intention of the deceased to execute the paper formally at some future time, and in such manner as to convey real estate. *Matthews vs. Warner*, 4 *Vesey*, 209; *Hancox vs. Abby*, 11 *Vesey*, 185.

The language employed in the paper, viz., "To Sarah Swartzwelder, &c., one thousand dollars, perhaps two

thousand dollars;" "perhaps J. W. (if he quits drinking liquor,") shows that the deceased had no fixed and settled purpose, and that he designed it as an inventory, a mere memorandum for making his will at some future time, when he had definitely fixed upon the disposition he would make of his property.

The rule establishing wills of personal property is an evil to be restricted, rather than a good to be extended. *Barnes vs. Syester*, 14 *Md.*, 527; *Scott vs. Rhodes*, 1 *Phill.*, 19.

*Louis E. McComas* and *Daniel Weisel*, for the appellees.

This paper signed by Peter Swartzwelder is his will. It clearly appoints executors. The bare nomination of an executor, without appointing anything to be done, is sufficient to make a paper a will. 1 *Williams' Executors*, (5th *Amer. Ed.*,) 197; *Godolph, pt.* 2, *c.* 5, *s.* 1; 3 *Redfield on Wills*, *ch.* 11, *pl.* 6, *s.* 3.

The use of the word "administrators" is equivalent to the word "executors." No particular form is requisite for the appointment of an executor. The appointee need not be thus designated. Any language indicating a desire that any person should perform the office, is sufficient. 3 *Redfield, ch.* 11, *p.* 6, *s.* 10, and cases cited in note 17.

The paper was stowed away with great care, a circumstance most significant of its testamentary nature. It is in the hand-writing of the deceased, and signed by him. *Barnes vs. Syester*, 14 *Md.*, 531; 1 *Jarman on Wills*, 91; *Plater vs. Groome*, 3 *Md.*, 144; *Shepherd's Touchstone*, 408; *Watts vs. Public Adm'r*, 4 *Wendell*, 168.

It is well supported by the authorities. 1 *Redfield on Wills*, 167-8, *note* 176, 177; *Boyd vs. Boyd*, 6 *G. & J.*, 25; *Torre vs. Castle*, 1 *Curt.*, 303.

This case presents a paper that is more complete and fuller than the paper held to be a will in *Harris vs. Pue*, 39 *Md.*, 535. This paper shows that if the deceased was

uncertain as to the final decision of his estate, he did not intend to die intestate as to executors. The extrinsic proof confirms this view.

In this case the deceased wrote the schedule of his estate, and appended certain legacies he intended, but finally closed the paper by appointing executors, and signed it.

The continuing purpose to name these executors is shown by his declaration in his sick room, but the act of God prevented his execution of the formal instrument. An immediate, sudden death is not required, it is only necessary that there be no change of intention as to the provisions of the will. *Boofter vs. Rogers,* 9 *Gill,* 45.

MILLER, J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Washington County, admitting to probate the following paper as the last will and testament of Peter Swartz-welder:

"Hagerstown August 11th 1875—what I *owen* is as " follows:

"Brick house on the publick—with six store-rooms, from " William Householder's property, on the publick square, "to Samuel Rouskuep hat store, on West Washington " street

" Hagerstown Lyceum Stock, Thomas Harbine (Presi- " dent) 4 *Shears* $5 $ *har.*

" Hagerstown Lyceum Stock, William M. Marshall " Prest.                                                                        20 *shears*

| " | do | " | " | " | 20 | do |
| " | do | " | " | " | 20 | do |
| " | . do | " | " | " | 10 | do |

" 3½ *shears* Waynsborro' Turnpik Company at $25.00 " *shear*

"4 *shears* Hagerstown and Sharpsburg Turnpike at " $25 *shear*

" Northe-n Pacific Railroad bonds ($7000) seven thou-
" sand dollars

" First National Bank Stock, Hagerstown Ma-yland 28
" *shears.*

" Hardware store No 1 on Corner of the publick Square.

" Hagerstown Gaslight Company 25 *shears* (D. Artzs,
" Presid-nt) Seventy dollars on each *shear* has *bin* paid.

" To Franklin Swartzwelder Heard two thousand dol-
" lars out of the *pr. ceads* of the sale of hous- on the pub-
" lick square.

" Sarah Swartzwelder of *Cuberlend, Myland,* b-other
" Isaac'- widdow one thousand or perhaps *tu* thousand
" dollars, after the sal- of property on the square

" House *whare* I now live on West Washington Street
No 82, to be sold.

" My houses to be sold and the *proceads* paid over to
the respictive parties named in my will, perhaps J. W. if
he *qits dukg. licker.*

" I appoint for my *administreatirs* Harry Swartzwelder
" of *Cunbeirland Mayland,* and Franklin A. Heard, of
" Hagerstown Maryland."

PETER SWARTZWELDER."

The case was tried in the Orphans' Court upon testi-
mony which appears in the record, and their order is be-
fore us for review upon facts as well as law. The legal
principles which control Courts in the decision of such
cases have been so often and so clearly stated by the
authorities in our own State, that it is quite unnecessary
to reiterate them here. The whole subject has been
elaborately discussed in *Tilghman vs. Stewart,* 4 *H. & J.,*
156; *Boofter vs. Rogers,* 9 *Gill,* 44; *Plater vs. Groome,* 3
*Md.,* 134; *Barnes vs. Syester,* 14 *Md.,* 507; *Harris vs.
Pue,* 39 *Md.,* 535; *Mason vs. Poulson,* 40 *Md.,* 355, and
*Devecmon vs. Devecmon,* 43 *Md.,* 335.

It appears from the proof that the paper before us was
written and signed by the deceased and there is nothing

to show it was signed on a different day from its date. He died about the 14th of December, 1875, aged about seventy-two years and had never been married. He had been engaged in the hardware business, was an intelligent, prosperous and good business man, and left real estate consisting of a dwelling house and warehouses in Hagerstown, valued at about $30,000, besides personal property. After the date of this paper and during the autumn, his health was feeble, but he was still able to go to his store and attend to his business. His mental faculties remained unimpaired, and he was capable of executing a valid deed until at least a few days before his death. As respects his mental and bodily condition, there is no proof tending to show he was prevented by sudden sickness, or anything which the law would pronounce an act of God, from perfecting it or executing a formal will capable of passing his real as well as personal estate, for more than three months after the date of this paper. It cannot therefore be upheld as a will upon that ground. It was found in his safe at his store, in a pocket book, with some notes and certificates of bank and other stocks. But this fact of itself does not make it a will. The place of deposit and the care with which it was kept, are merely circumstances to be considered and weighed with all the other facts of the case, in solving the question whether the party intended it as his will or not.

In the absence of proof to the contrary we must assume the paper was written and signed on the day it bears date. The questions then for us to determine are, did he write it *animo testandi*, that is, did he then intend the paper as it stood, to be his will without alteration and without looking to anything further to be done in order to perfect it? or did he afterwards recognize and adopt it as his will? To give a satisfactory answer to these questions we must first look to the paper itself and the intrinsic evidence it furnishes. What is it and what does it profess

to be? It no where on its face professes to be the will of the writer. The major part of it is simply a statement of what he owned, in form and in fact an inventory, or a schedule of his property. That is followed by three clauses indicating who should receive portions of it, (and as to one of these he had not made up his mind as to the amount, and as to another, was undecided whether he would give him anything) by a will to be thereafter executed. He would give to one $2000 out of the proceeds of the sale of his house. To his brother's widow he would give one or *perhaps* two thousand dollars, after, that is, out of the sale of property on the square. It then says his houses are to be sold and the proceeds "paid over to the *respective parties named in my will*," that is, to the parties named in the will which I may or intend to execute, and then is added *"perhaps* J. W. if he quits drinking liquor," that is, I may give J. W. a portion if he reforms his habits. There is no residuary clause, and nothing is said respecting any disposition of the stocks and bonds scheduled in the former part of the paper, and no disposition indicated, except by a will to be thereafter made, of the great bulk of the proceeds of his real estate. It seems to us impossible for any one to read this paper and say the writer of it intended it should be, and wrote it for his last will and testament. So far as it refers to any intended testamentary disposition of his property it indicates a mind in as hesitating and undecided a state as could well be imagined. It does not rise to the dignity of memoranda or instructions to a scrivener for the preparation of a will. He knew, or if he did not, he was informed by his attorney after the date of this paper, that three witnesses were essential to a valid will of real estate, and was furnished with the form of such an instrument, and yet so far as this paper contains any possible intimation of testamentary wishes, it refers to that species of property alone, and is not attested by a single witness. Unless

therefore we can find evidence of some acts or declarations clearly showing that he intended this paper as it stood to be his will, or subsequently recognized or adopted it as such, it cannot be admitted to probate. But when we turn to the record we find an entire absence of any such testimony. There is no proof that he ever, to his most intimate friends, declared this paper to be his will, or mentioned or referred to it in any way to any one. On the other hand it is proven that more than a month before his death, and more than two months after the date of this paper, he repeatedly declared to his pastor, his physician, and his legal adviser who were intimate with him, and conversed with him on the subject, that *he had made no will.* To the first he said in addition, that it was a matter about which he had been thinking for several years and *it ought to be done,* and to the second that he would attend to it *when he got down to his store.* He told his legal adviser and friend that he wished only the form of a will, and when furnished with it and instructed as to the number of witnesses and mode of executing it, he thanked him, put it in his pocket and said "when I get down to my store I will attend to this." These declarations thus repeatedly made, are wholly inconsistent with and repel the idea that he thought he had already made a will by writing this paper.

In short this case in all its circumstances differs widely from that of *Harris vs. Pue,* and *Devecmon vs. Devecmon,* in which the papers were sustained as wills. Here the paper itself and the acts and declarations of the writer concur in disclosing an absence of the *animus testandi* and of all subsequent recognition or adoption.

But it has been strenuously argued that although the paper may not operate as a will disposing of property, it is yet good as a testamentary appointment of executors, and should therefore be admitted to probate. If the paper contained nothing but the clause relating to such appoint-

Lungren and Swartzwelder *vs.* Swartzwelder and Heard, Ex'rs.

ment there would be much force in this argument. But such appointment must also be made *animo testandi*,—it must be or form part of a testament. The intention in this respect must appear and be ascertained in the same way as it is with respect to dispositions of property. We must look to the entire paper, treating it as a whole, and to all the acts and declarations of the writer relating to it. Doing so, we find nothing to warrant us in separating this part of the instrument from those which precede it, or to justify the conclusion that the writer wrote this part with, and the others without the *animus testandi*. What he said to his friend and legal adviser confirms the view that he regarded this as well as the disposition of his property, about which he was then clearly undecided, as something to be carried out and completed by a will to be thereafter executed. His legal adviser informed him that he should name *in his will* who his executor or executors should be, to which he replied, *"I know that,* as my executors *will be* my nephew Harry and Mr. Franklin Heard" and asked what he thought of them, and his counsel replied they would be very good men. This seems to us a clear declaration of an intention to name these parties as executors *in the will,* the form of which he wished his attorney to furnish him, and which he then intended to execute. In *Barnes vs. Syester,* there was a clear and definite appointment of an executor, but as it formed a part of an incomplete and unfinished paper, this Court reversed *in toto* the order admitting it to probate, and the same result must follow here.

*Order reversed.*

(Decided 10th May, 1876.)