(Decided 11th January, 1884.)

---

ELIZA ANN BYERS, and JOHN G. BYERS *vs.* ISADORE R. HOPPE, mother and next friend of JOSEPH A. HOPPE, and others.

*Caveat to a Will—Essentials to the Validity of a Will—Animus testandi—Parol Evidence—Sec. 303, of Art. 93, of the Code.*

It is not necessary to the validity of a will that it should contain the appointment of an executor, or that it should dispose of all the testator's estate, real or personal; nor does the omission to make such appointment, or the failure to dispose of the entire estate afford any evidence whatever of the absence of the *animus testandi*, where the instrument is complete on its face, and professes in direct and explicit terms to dispose of only a part of the testator's property.

If a paper be perfect on its face and validly executed, and if by its terms it discloses that it was written *animo testandi*, it must, if

Byers *vs.* Hoppe, *et al.*

voluntarily made by a competent testator, stand as his will unless superseded by a later one, or revoked in the mode pointed out by the statute.

In such case parol declarations of the deceased can never be received for the purpose of revoking or altering, or in any way preventing the instrument from operating as a will.

A decedent during his life-time wrote on the back of a business letter written by him to *John G. Byers* and *Eliza Ann Byers* his wife, and mailed to the said *John G. Byers* as follows: " *Ann* don't worry yourself about this matter, as you see you are almost cut out on every side by your father, and your mother, but you have been a faithful daughter to me, and have obeyed me, and you have seen a great deal of trouble; don't worry yourself but take things easy and do the best you can for the present. I have prospered and have accumulated a great ———— of money together, and I intend to do what I please with it, and *Ann*, after my death you are to have forty thousand dollars; this you are to have will or no will; take care of this until my death; *Ann* keep this to yourself.

J. HENRY HOPPE."

"To *Eliza Ann Byers*."
On a caveat to said paper, it was HELD:

1st. That the concluding sentences, " and *Ann, after my death* you are *to have* forty thousand dollars; this you are to have, *will, or no will,* take care of *this until my death,*" accompanied with the direction, " To *Eliza Ann Byers,*" evince just as effectually, in legal contemplation, that the writer wrote them *animo testandi,* as if he had said in terms, "I hereby will and bequeath to *Eliza Ann Byers* forty thousand dollars, to be paid to her at my death out of my personal estate."

2nd. That it was an instrument *complete* on its face, and being written and signed by the testator, it possessed all the requisites of a valid will of personal property.

3rd. That parol evidence was not admissible before either a Court or a jury in order to determine whether it was written as and for a last will or testament, and with the intention that it should operate and take effect as such.

4th. That parol declarations of the testator, (if he ever made them,) that he never intended it should operate as a will, or that he intended to make a will giving all his property to other parties, could not be availed of by the caveators, because the law declares

that "no will in writing concerning any goods or chattels or personal estate shall be repealed, nor shall any clause, devise or bequest therein be altered or changed, except the same be in the life-time of the testator committed to writing, and after the writing thereof read unto the testator and allowed by him, and proved to be so done by three witnesses at least." (Art. 93, sec. 303, of the Code.)

The case of *Mason vs. Poulson*, 40 Md. 355, explained, and shown not to be in conflict with the views expressed in this case.

APPEAL from the Orphans' Court of Carroll County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and BRYAN, J.

*Wm. P. Maulsby*, for the appellants.

*Charles B. Roberts*, and *Charles Marshall*, for the appellees.

MILLER, J., delivered the opinion of the Court.

By the decision on the former appeal in this case, reported in 60 *Md.*, 381, it was conclusively settled that the paper writing propounded as his will or testament *was written and signed* by Mr. Hoppe, the alleged testator. But by that appeal the question whether this paper was *testamentary in its character* was not presented and therefore not decided. Further proceedings in the case were then taken, and upon petition of the caveators, and against the protest of the caveatees, the Orphans' Court ordered three other issues to be transmitted for trial by a jury. From that order the present appeal has been taken by the caveatees. The issues are in substance as follows:

1st. Was this paper writing the complete and final last will and testament of the said Hoppe, and did he make

and execute it as and for a last will and testament, and with the intention that the same should operate and take effect as such?

2nd. If at the time he wrote this paper he did not intend it to operate as a last will or testament, did he subsequently recognize and adopt it as his last will or testament in its present shape?

3rd. Is the said paper writing the last will and testament of the said John Henry Hoppe?

In view of what has already been determined in regard to this paper, the appeal from the order granting these issues presents in fact but one question, and that is whether *its testamentary character* is to be decided by the Court, upon an inspection of the paper itself, and the interpretation to be placed upon the language it contains, or by a jury upon proof to be submitted to them? That the paper in question was written and signed by Mr. Hoppe on the 9th of January, 1875; that it was so written to and for Mrs. Eliza Ann Byers, on one side of a half sheet of paper, on the other side of which he had written a business letter to John G. Byers and the said Eliza Ann Byers, his wife; that this letter was mailed by him to the said John G. Byers on the 11th of January, 1875; that it was received by the said Byers and wife and preserved by them, or by the wife, until after the death of Mr. Hoppe, in January, 1881, and was then offered and propounded as his will by Mrs. Byers, are facts about which legal controversy can no longer exist. The business letter and the writing in controversy are both set out in the report of the decision on the former appeal. We give here only the latter, which is as follows:

"Ann, don't worry yourself about this matter, as you see you are almost cut out on every side, by your father and your mother, but you have been a faithful daughter to me, and have obeyed me, and you have seen a great deal of trouble; don't worry yourself but take things easy

and do the best you can for the present : I have pros-
pered and have accumulated a great —— of money to-
gether and I intend to do what I please with it; and Ann
after my death you are to have forty thousand dollars ;
this you are to have, will or no will ; take care of this until
my death ; Ann keep this to yourself.

"J. Henry Hoppe."

"*To Eliza Ann Byers.*"

In our opinion these concluding sentences : " And Ann,
*after my death* you are *to have* forty thousand dollars;
this you are to have, *will or no will ;* take care of *this until
my death,*" accompanied with the direction, " To Eliza Ann
Byers," evince just as effectually, in legal contemplation,
that the writer wrote them *animo testandi,* as if he had
said in terms, " I hereby will and bequeath to Eliza Ann
Byers forty thousand dollars, to be paid to her at my
death out of my personal estate." There is nothing to
indicate that he intended to make this bequest by a will
to be thereafter executed, and that it was not to take
effect unless such a will was made. The plain terms are :
" You are to have forty thousand dollars after my death,"
not by a will which I intend to make giving you that sum,
but " you are to have it will or no will ; " and he then di-
rects her to " take care of this until my death," that is to
keep *this writing* as the *instrument* which makes and evi-
dences the gift. It is also an instrument *complete* on its
face, and being written and signed by the testator it pos-
sesses all the requisites of a valid will of personal property.
There is nothing incomplete, or unfinished about it. It
exhibits no uncompleted formality which the testator may
have supposed was essential to its validity. No blanks are
left as to the amount intended to be given, or the party
intended to be benefited, nor does it contain a clause ap-
pointing an executor with a blank left for the name, or an
attestation clause without witnesses, or any similar imperfec-
tion. It is not necessary to the validity of a will that it should

contain the appointment of an executor, or that it should dispose of all the testator's estate, real or personal, nor does the omission to make such appointment or the failure to dispose of the entire estate, afford any evidence whatever of an absence of the *animus testandi,* where the instrument is complete on its face, and professes in direct and explicit terms to dispose of only a part of the testator's property.   If then this paper is thus complete on its face, and the *animus testandi* thus appears from the language it contains, how can parol evidence be admissible before either a Court or a jury in order to determine whether it was written as and for a last will or testament, and with the intention that it should operate and take effect as such?   It is not alleged or suggested that it is a sham, or the offspring of a jest, or the result of a mere contrivance to effect some collateral object, and never seriously intended as a disposition of property, as was the case in *Lester, et al. vs. Smith, et al.,* 3 *Swabey & Tristram,* 282, or that it was written by Mr. Hoppe as a specimen of how short a will he could write, as was done in the case of *Nichols vs. Nichols,* 2 *Phillimore,* 180.   Again, if the instrument is such as we have pronounced it to be, it is plain that parol declarations of the testator (if he ever made them,) that he never intended it should operate as a will, or that he intended to make a will giving all his property to other parties, could not be availed of by the caveators, because our statute law declares that "No will in writing, concerning any goods or chattels, or personal estate, shall be repealed, nor shall any clause, devise or bequest therein be altered or changed by word of mouth only, except the same be in the life-time of the testator committed to writing, and after the writing thereof read unto the testator and allowed by him, and proved to be so done by three witnesses at the least," *Code, Art.* 93; *sec.* 303.   In all the reported decisions of this Court bearing upon this subject, the alleged wills, differing widely in that respect from the

instrument now before us, appeared in an imperfect and unfinished state ; and in every one of them where parol declarations of the decedent were resorted to and admitted, it was for the purpose of ascertaining whether he intended it should operate as a will in the shape in which it was.

In *Tilghman, et al. vs. Steuart, et al.*, 4 *H. & J.*, 156, the paper contained blanks for the names of legatees as well as for its date. It was not signed though it had been written by the alleged testator. It professed to dispose of real as well as personal property, and there was an attestation clause without witnesses. The effort was to set it up as a will of personalty, and the declarations of the decedent were admitted, but a majority of the Judges held the evidence to be insufficient, and reversed the order of the Orphans' Court admitting it to probate. In the opinion of MARTIN, J., one of the majority, it was said that to constitute a good will of personal property "the paper must either be *complete on the face of it,* or must be supported by parol evidence. It must appear from circumstances, or the declarations of the deceased, that it was intended to operate as his will in its imperfect and unfinished state. *If it be complete on the face of it, it requires no adventitious aid ; it is full evidence in itself of the intention of the testator.* But if incomplete and unfinished, and other acts are evidently required and *intended to be done* to give it full authenticity and completion, in my opinion, it cannot be received as a will even of personal property, unless evidence is produced to satisfy the Court it was intended to operate as such, in its imperfect and unfinished state. This I conceive, is not, as was suggested by counsel, a novel doctrine, but has been recognized and acknowledged from the time of *Swinburne* to the present day." The law as thus stated has been approved and reiterated in every subsequent case in which the same or a similar question has arisen.

*Boofter vs. Rogers,* (9 *Gill,* 44,) was tried before a jury upon issues, and the paper consisted of instructions or

memoranda written by the deceased to enable his scrivener to prepare his will. It was held that such a paper might be made a will by subsequent adoption, or if the more formal will was left unfinished by reason of any act which the law pronounces to be the act of God, provided there was a continuance of the intention down to the time such act intervened; and it was for the purpose of determining these questions that the declarations of the deceased were put in evidence.

In *Plater vs. Groome*, (3 *Md.*, 134,) the paper was a codicil disposing of both real and personal property. It contained the usual attestation clause, but there were no witnesses, and it was not signed, nor were the blanks for the date filled up. The alleged will in *Barnes vs. Syester*, (14 *Md.*, 507,) was of like purport, and contained the same defects, except that it was signed as well as written by the deceased. In that case the declarations of the deceased were admitted and used, but the Court, in a very able opinion delivered by Tuck, J., in which the English as well as the Maryland decisions are reviewed, held that the evidence was not sufficient to overcome the presumption arising from the imperfect condition of the paper that the deceased intended to do some further act to complete it, or to show that she was prevented from finishing it by the act of God.

In *Harris vs. Pue, Adm'r, &c.*, (39 *Md.*, 535,) the only defect consisted of blanks as to the amounts to be given to three named legatees. In other respects the instrument was, on its face, a good will of personalty, and the Court held that the declarations of the deceased, with the other evidence in the case, clearly showed that he intended the paper as it stood to operate as his will.

*Mason, et al. vs. Poulson, Adm'r, &c.*, (40 *Md.*, 355,) was another case tried before a jury on issues. The reporter has omitted to set out the paper or give any description of it. It was not signed, though written by the

alleged testator whose name appears in the commencement of it. In the first clause, he says: "It is my will that all my just debts and funeral expenses shall be paid by my executors hereinafter named, out of my estate as soon after my decease as by them, my executors, shall be found convenient," but there was no subsequent clause appointing executors. There were also several erasures and interlineations in pencil. It was cut to a considerable extent in one place, and bore other marks of defacement and partial mutilation. It was alleged to be incomplete and unfinished as a testamentary paper, and that it was intended simply as a memorandum for a complete will to be thereafter written and reduced to form, with such additions and alterations as the deceased might choose to make. There was proof on one side, that he declared it was a "schedule" which he wished to have perfected by a formal will, and that he intended to make an additional legacy, and also to appoint an executor; and, on the other, that, though such had been his intention at one time, yet shortly before his death he said he was satisfied with it as it stood. This is the case from which, as the appellees' counsel say in their brief, two of the issues in the present case were taken. They may have been misled by the imperfect report of the case, but an examination of the record, and of the *original paper* which was before us when the case was argued, will show that it was manifestly imperfect and incomplete on its face, and altogether unlike, in this respect, that in the present case.

In *Devecmon vs. Devecmon*, (43 *Md.*, 335,) the paper which disposed of both real and personal estate was written, signed, and sealed by the deceased, and was complete in all respects, except the failure to execute it in the presence of witnesses. The Court admitted that as there was an attestation clause appended by the testator himself, the presumption was that he intended to execute the paper in the presence of witnesses, and that it was incomplete in

his apprehension of it, even as a will to pass personal estate; but held that such presumption was one of fact only, which could be rebutted or repelled by extrinsic evidence. The proof was conclusive, from his declarations repeatedly made, that he regarded the will, in its present shape, as sufficient to pass his personal estate, and he distinctly declared that it was his will for that purpose. It was, therefore, admitted to probate as a good will of personalty.

In *Lungren vs. Swartzwelder*, (44 *Md.*, 482,) the paper was more of an inventory of property than anything else, and so far as it referred to any intended testamentary disposition, it indicated a mind in as hesitating and undecided a state as could well be imagined. It did not rise to the dignity of memoranda or instructions for the preparation of a will. There was no evidence of any acts or declarations of the deceased clearly showing that he intended this paper, as it stood, to be his will, or that he subsequently recognized or adopted it as such, and it was refused probate.

In this notice of our Maryland decisions we have not adverted particularly to the cases of *Weems vs. Weems, et al.*, (19 *Md.*, 349,) and *Morsell, et al. vs. Ogden, &c.*, (24 *Md.*, 377,) because they merely re-announce the law as laid down in *Tilghman vs. Stewart*. We have made this review of the cases in order to show that the instruments passed upon in all of them were in an unfinished and imperfect state. They were all conceded to be imperfectly executed or defective instruments. On the other hand, if the paper be perfect on its face and validly executed, and if, by its terms, it discloses that it was written *animo testandi*, it must, if voluntarily made by a competent testator, stand as his will unless superseded by a later one, or revoked in the mode pointed out by the statute. In such case parol declarations of the deceased can never be received for the purpose of revoking, or altering, or in any way preventing the instrument from operating as a will;

and for this no other authority need be cited than the recent decision of this Court in *Sewell vs. Slingluff*, 57 *Md.*, 537. We have examined the English cases referred to by the appellees' counsel in their briefs, as well as many others, and find that they all concur in stating the law to be as it is announced and adopted in the Maryland cases above cited. We find no contrariety of opinion or diversity of views upon the subject, and therefore deem it unnecessary to protract this opinion by a special reference to, or review of those cases.

If we are right in the views thus expressed, it follows that there was not only no necessity but no ground for the granting and trial of issues in this case. In fact, the petition of the caveators states no reason why they should be granted beyond the general denial that the paper is, according to its true legal construction and interpretation, the will or testament of the deceased, and the general averment that he did not make and execute it as and for a will and testament, and with the intent that the same should operate and take effect as a will. The only disputed question of fact which we can conceive could legitimately arise in the case has already been disposed of and settled by the verdict of a jury. From an inspection of the paper itself, and giving its terms their true legal construction and interpretation, this Court now pronounces it to be clearly and unequivocally testamentary in character. The result, therefore, is that the order appealed from must be reversed, and the cause remanded to the end that this paper writing may be admitted to probate as a will of the deceased disposing of a part of his personal estate.

*Order reversed, and*
*cause remanded.*

(Decided 11th January, 1884.)