(Decided 1st February, 1868.)

---

## WALTER HALE vs. RICHMOND MONROE.

### Wills—Statute of Frauds—Evidence—Practice.

An original will having been lost, a copy thereof was made from memory, and the same admitted to probate by the Register of Wills, and duly recorded in his office; a certified copy of this paper was offered in evidence to show a devise of real estate. HELD:

That the same was inadmissible under the Statute of Frauds, and that the jury could not presume the existence of the will from the probate thereof.

The policy of the law which carefully seeks to protect last wills and testaments from frauds, imposition and undue influence, requires that the contents of a paper which has been lost or destroyed, and which it is sought to establish as a will, must be proven by the clearest, the most conclusive and satisfactory testimony.

A paper purporting to be a last will and testament, probated on the 31st of March, 1848, and conveying all the interest and estate of the testator

Hale *vs.* Monroe.

in the tract of land, upon which the trespass was alleged to have been committed, to her daughter, the wife of the plaintiff, being read in evidence by the plaintiff, HELD :

That it was competent for the defendant, for the purpose of counteracting any influence which the production of the will might have had upon the jury, to give in evidence the declarations and admissions made by the testator in 1842, and also prior and subsequent thereto, going to show that she never claimed any interest in the *locus in quo;* and that such evidence was strictly rebutting.

Evidence objectionable when offered as rebutting, may be admissible if introduced as testimony in chief.

Upon a question of title to real estate, an instruction which confines the attention of the jury to evidence of the plaintiff's possession of the *locus in quo,* without leaving them to consider the character of the evidence on both sides, tending to show a mixed possession, is erroneous.

APPEAL from the Circuit Court for Howard County.

This was an action of trespass *quare clausum fregit,* instituted by the appellee against the appellant in the Circuit Court for Baltimore county, on the 9th of June, 1855.

The trespass complained of was the removal of a fence, forming part of the enclosure of a field of about seventy acres in Long Green valley, in said county. Two juries, sworn in the case, failing to agree, were discharged. On the 1st of September, 1859, upon the suggestion and affidavit of the appellee, (plaintiff below,) the case was removed to the Circuit Court for Howard county. The plea to the action was "not guilty." It was agreed, however, that the appellant, (the defendant below,) under that plea, might set up any defence which could have been specially pleaded, and that the plaintiff might offer in evidence any matter which could have been offered upon any replication to such special plea. It was proved on the part of the plaintiff, that the field in question surrounded a much smaller lot within which stood the dwelling house which he occupied ; that James Greenfield, who died in the last century, after the Declaration of Independence, had lived in said house ; that after his

decease, his widow, Phœbe Greenfield, resided there till her own death in 1822; and that Keziah Dilworth, daughter of the said Phœbe, and mother of the plaintiff's wife, lived there with the said Phœbe, and took care of her, and after her death, continued to live there, the plaintiff and his wife forming part of her family; and that the said Keziah died about the year 1848. It was further proved that the plaintiff had cultivated the small inner lot, and had cut wood and rails on the land outside of it, and that his cattle and pigs had been used to range in the field. It was also proved that the defendant had removed a part of the north fence of the plaintiff's close. On the part of the defendant, a deed from Micaijah Greenfield, son and heir-at-law of the said James Greenfield, to Aquila Hall, made the 12th of February, 1785, was read in evidence. This was a conveyance in fee of land embracing the said seventy acres. The defendant further gave in evidence the last will of Aquila Hall, made the 20th of February, 1815, and proved the 22d of March, 1815, by which all said land, together with other contiguous lands, were devised to Robert L. Hall, to the use of Susan Hale, daughter of the said Aquila Hall, and wife of Henry Hale, for the term of her life, with a provision after the decease of said Susan and Henry, for a sale and division of the proceeds amongst said Susan's children. The defendant further proved that James Greenfield died seized of the *locus in quo*, and that after Aquila Hall's death in 1815, the said Robert Hall, Susan Hale and Henry Hale, possessed it, and that the two last were in occupation of it at the time of the death of the said Aquila, and continued to occupy it. The small lot in the middle of the seventy acres was enclosed in the time of Mrs. Phœbe Greenfield.

It was proved that Henry Hale, (in his life-time,) Susan Hale and the defendant, their son, who lived with his mother and acted for her at the time of the supposed trespass, cut fire wood and rails, extensively and continuously, from the seventy acres, both for their own use and for sale, pastured cattle there

and received the cattle of neighbors to pasture for a consideration; burnt lime, and performed many other acts of possession and ownership, undisturbed. It was also proved that the fences which enclosed the field were all erected by the defendant, either alone or conjointly with a neighboring land owner: all the land outside of the little house lot, was open on two sides until about the year 1846, when the north fence, the removal of which was the alleged trespass, was erected *by the defendant.*

*1st Exception:* The defendant having rested, the plaintiff then offered in evidence a paper purporting to be the copy of a copy (the original having been lost) of the last will and testament of the said James Greenfield, dated February 1st, 1779, and proved 28th of November, 1779, by which, the testator, who was the grandfather of Mrs. Monroe, the wife of the plaintiff, devised all his real estate, consisting of a tract of land called "Trueman's Acquaintance," (of which the seventy acre field trespassed upon formed a part,) in the first place to his wife Phœbe Greenfield, to hold during her widowhood, "and, if in case she marries, then she only to possess one-third of said land, and the remainder of said land to be rented out and the said rent to be divided between Jaraa Greenfield and Diana Greenfield; after the decease of my wife, Phœbe Greenfield, the whole land to be sold and the money equally to be divided among all my children."

The defendant objected to the admission of this document in evidence. This objection, the Court (BREWER, J.,) overruled, and permitted the paper to be read to the jury; to this ruling the defendant excepted.

*2d Exception:* The plaintiff then read in evidence a duly authenticated copy of the last will and testament of Keziah Dilworth, attested by three witnesses, and proved the 31st of March, 1848, which purported to devise all her right and claim to a tract of land known by the name of "Trueman's Acquaintance," to her daughter, Diana, the wife of the plaintiff. The plaintiff having again closed his case the defendant

offered as rebutting evidence, to prove admissions and declarations made by the said Keziah Dilworth, in 1842, and also prior and subsequent thereto, that she had no rights, and did not claim to exercise any, outside of the small lot containing seven or eight acres, surrounding the house she occupied. The plaintiff objected to this evidence as inadmissable to show title, and also objected to it generally, as not rebutting. This objection the Court sustained, and refused to permit such evidence to go to the jury; and to this ruling the defendant excepted.

*3d Exception:* The defendant thereupon offered to prove further in rebuttal, that he, and the persons under whom he claimed, had had exclusive and adversary possession for more than twenty years continuously, previous to the alleged trespass, by enclosure of part of the land described and mentioned to be conveyed in the deed from Micaijah Greenfield to Aquila Hall, with claim of title to the whole, including the *locus in quo,* and also acts of user, by cutting of trees, cultivation, and enclosure outside of the part so kept under continual enclosure for more than twenty years, and within the limits of the land in controversy. The plaintiff objected to said evidence as not being rebutting, and the Court sustained the objection and refused to admit it; to this ruling the defendant objected.

*4th Exception:* The plaintiff asked the Court to instruct the jury as follows:

1st. If the jury find the probate of the will of James Greenfield, offered in evidence by the plaintiff, then they may and ought to find the existence of such will; and if they further find from the evidence in the cause that the defendant entered upon the field where the north fence was situated, as stated by the witnesses, (if they believe said witnesses,) and pulled down and carried away a part thereof; and if they further believe that at the time when this act was done by the defendant, the plaintiff was in possession of the field in question, then the plaintiff is entitled to recover such damages, as under all the circumstances of the case, the jury may deem to be just and reasonable.

2d. If the jury find the facts stated in the plaintiff's first prayer, then the fact that the north fence or any portion thereof, was put up by the defendant, or by his direction, cannot constitute any valid objection to the plaintiff's recovery.

The Court granted these prayers, and the defendant excepted, and the verdict being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*Arthur W. Machen* and *I. Nevett Steele,* for the appellant, argued:

1st. The copy of the supposed will of James Greenfield, was not admissable in evidence. As he died in 1779, the jurisdiction of the Orphans' Court, must be sought in the Acts of 1715, ch. 39, 1777, (February,) ch. 8, and 1777, (October,) ch. 9.

Proof taken in an Orphans' Court of the contents of a lost will could not avail for any purpose in a court of law, in so far as a devise of land was in question. Probate taken of an *existing* will, may well enough be *prima facie* evidence as to land, because the production of the original can be required. The *prima facie* evidence can do no harm when there is opportunity of confronting it with the original and best evidence. But to make a probate taken of a *lost* will presumptive evidence as to land, is in effect to shift the burden of proof unalterably. The evidence becomes practically conclusive, from the want of that best evidence which alone can certainly disprove it. *Cheney vs. Watkins,* 1 *H. & J.,* 533; *Darby's Lessee vs. Mayer,* 10 *Wheat.,* 454. At most the certificate of the Register cannot be received for more than it says. To make this document competent evidence of a lost will of real estate, many facts are wanting. It does not appear that the original was signed by the testator. Nor that it was attested and subscribed in his presence by *three* witnesses.

Lucas and Lynch swore that they subscribed it, but say nothing of any third witness. There was no sufficient proof of the loss. When was it lost? Before or after the death of the testator? In whose possession was it last seen? *Non constat* that the testator did not himself destroy it, *animo revocandi.* The contents and language are not proved with the degree of certainty that the law requires. *Rhodes, et al., vs. Vinson, et al.,* 9 *Gill,* 169; *Glenn vs. Rogers,* 3 *Md. Rep.,* 320; 2 *Redfield on Wills,* 7-9, *note* 12.

The instrument on its face bears evident signs of imperfection. For example, although there is an allusion in the beginning to "executors," no executors are afterwards named. The rule that an ancient document proves itself, of course cannot apply to a copy; nor are the presumptions which obtain in respect to originals allowable in the case of a copy. *Coale vs. Harrington,* 7 *H. & J.,* 155.

2d. The foregoing points apply to the question in the first bill of exceptions. The plaintiff's first prayer, brought up by the fourth bill of exceptions, is however obnoxious to the further objection in respect to this supposed will, that it makes the probate conclusive evidence of the existence of it, and does not submit the question of its execution with the legal formalities, to be determined as a matter of fact upon the whole evidence. There was evidence before the jury that possession had been held inconsistent with the will, commencing recently after the death of James Greenfield, and extending down to the time of the alleged trespass. In this particular the case is materially different from that presented to the jury in *Hall vs. Gittings' Lessee,* 2 *H. & J.,* 112, which moreover was *not* the case of a *lost* will. There the office copy represented an original, actually filed in the prerogative office, and consequently the same presumptions could be made as if the original document were present in Court.

3d. But the will was inadmissible in evidence under the circumstances of the offer, for another and distinct reason. Upon the supposition that it was a valid will, the title to

the land in question descended to the eldest son and heir of the testator, Micaijah Greenfield. His deed to Hall was an effectual conveyance of the fee. Consequently, Mrs. Hale, as devisee of Aquila Hall, had a legal right to the possession.

And not only did the legal title devolve upon Micaijah Greenfield, but he was the proper person to execute the power and trust to sell. *Allum vs. Fryer*, 3 *Ad. & El. N. S.*, 442, (43 *Eng. C. L.*, 811;) *Patton vs. Randall*, 1 *Jac. & Walk.*, 189; *Bentham vs. Wiltshire*, 4 *Madd.*, 44.

Where a power of sale is given, to be executed after the death of a life-tenant, a sale may be made of the reversion in the lifetime of the tenant for life. This holds even where the power is given to executors: *Co. Lit.*, 113, *a, note* (2) *by Hargrave: a fortiori* where the heir, who has the title, sells. The acquiescence of *all* the children of James Greenfield in the conveyance to Aquila Hall, is strong evidence that it was regarded as valid for some reason.

4th. The plaintiff's *prayers* also, are liable to objection, upon the ground stated under the last point.

5th Upon any view that can possibly be taken, Micaijah Greenfield, as one of the children of James Greenfield, was entitled to a share of the proceeds of the sale directed to be made of the land. Hence, if an equitable interest in the land itself should be implied from the direction to sell and divide the proceeds, Micaijah had his share of such equitable estate, besides being seized of the whole legal fee. Aquila Hall at all events was assignee of all the interest of Micaijah, and his devisee, Susan Hale, (under whom the defendant claimed,) could not be less than a tenant in common of the land. As tenant in common, she certainly had a right to remove the fence which she herself had erected. Hence the plaintiff's prayers ought not to have been granted.

6th. The evidence offered on the part of the defendant and mentioned in the second bill of exceptions, strictly rebutted the case which the plaintiff had just set up by giving in evidence the will of Keziah Dilworth, and the will of James Greenfield. *Keener vs. Kauffman*, 16 *Md. Rep.*, 308.

It is perhaps still more plain that the Court erred in excluding the evidence mentioned in the third bill of exceptions.— *Shaw vs. Beck,* 8 *Exch.,* 392, 398, (20 *Eng. Law & Eq.,* 309 ;) *Gilpins vs. Consequa, Pet. C. C.,* 85 ; *Cope vs. Thames Haven Dock Co.,* 2 *C. & K.,* 757, (61 *Eng. C. L.* 757.)

The rule on this subject seems to be that if the Judge *admit* evidence, competent in itself, at one stage of a trial, when it was more properly admissible at another, it is not in general, cause for exception—the order of the reception of evidence being within discretion ; but if he *exclude* evidence which ought to have been admitted at the time it was offered, it *is* ground of exception.

7th. The first prayer of the appellee should not have been granted, because it limited the inquiry before the jury as to possession to the time of the trespass, in a case where there was conflicting evidence of possession for many years previous to that time, and did not even require the jury to find that the possession was exclusive and actual. *Dorsey vs. Eagle,* 7 *G. & J.,* 333 ; *Ridgely vs. Bond and Wife,* 17 *Md. Rep.,* 14 ; *Armory vs. Delamire,* 1 *Smith's Lead. Cases,* 584.

*Henry Rozier Dulany,* for the appellee, contended :

1st. That mere possession, exclusive in its character, proved to exist at the time of the alleged act of trespass, is sufficient to maintain the action against a mere wrong-doer, *i. e.,* one who cannot show a better title. *Norwood vs. Shipley,* 1 *H. & J.,* 295; *Browne on Actions at Law,* 45 *Law Lib.,* 295, 412.

The evidence in the case clearly shows that Monroe was in actual exclusive possession of the *locus in quo* at the time when Hale entered thereon and removed the north fence.

2d. It is not necessary, however, that Monroe's possession should have been exclusive, for had Hale, or any other person for whom he might have been acting as agent, occupied the property with him, still the action would lie, inasmuch as the destruction or removal of a thing held in common, entitles

the co-tenant to an action of trespass.   *Browne on Actions at Law*, 45 *Law Lib.*, 296, 414.

3d.  Monroe having the exclusive possession, could have maintained the action if there had been no removal of the fence at all.   A close is an imaginary line drawn around property; and breaking a close, is simply transgressing that line.   *Mundell vs. Hugh and Lloyd Perry*, 2 *G & J.*, 193; *Browne on Actions at Law*, 45 *Law Lib.*, 301, (*top page.*)

4th.  If the above propositions be correct, it is clear, that the plaintiff's prayer must be upheld by this Court, unless it appears from the record that there was evidence legally sufficient to establish a better title to the *locus in quo* in Hale than in Monroe, or to show that the former in removing the north fence, acted as the authorized *agent* of some one who had such *better title*.

Should the appellant choose the former of these alternatives and attempt to justify as having a good title in himself, he must found his rights upon *adverse possession*, for there is no evidence whatsoever in the record upon which he could base a claim resting upon a common assurance.   Now, what is it necessary for a party to show in Maryland, in order to bar, by estoppel *in pais*, the title of the true owner?   He must prove, by competent evidence, an actual, hostile, continued, exclusive and enclosed possession of twenty years' duration. *Casey's Lessee vs. Inloes, et al.*, 1 *Gill*, 433; *Cresap's Lessee vs. Hutson*, 9 *Gill*, 276; *Stump, et al., vs. Henry, et al.*, 6 *Md. Rep.*, 208; *Hoye vs. Swan's Lessee*, 5 *Md. Rep.*, 237; *Armstrong vs. Risteau's Lessee*, 5 *Md. Rep.*, 256; *Thistle, et al. vs. The Frostburg Coal Co.*, 10 *Md. Rep.*, 129.

It is true, that by force of the Act of 1852, ch. 177, sec. 2, and the Code, Art. 75, sec. 52, enclosure is not now necessary as an ingredient of title by possession.   But the present action was instituted in 1855, only three years after the passage of the act above mentioned, and since this Court has decided that the law in question has no retroactive operation except where the disseizor claims under "an equitable or colorable

title," (*Thistle, et al., vs. Frostburg Coal Co.*, 10 *Md. Rep.*, 129, 148,) *i. e.*, under a claim of title, *bona fide* made, we shall contend that it has no application to the present controversy, because here the appellant stands in the position of a mere *tort feasor*. He does not pretend to any derivative title in himself, but founds his claim solely upon repeated acts of wrong and trespass.

But supposing that the law, as altered, is applicable to the present case, and that it is not incumbent upon the appellant to prove an enclosed possession, still it is necessary for him to prove the other requisites of an adverse possession, and this, we submit, he has signally failed to do. He never had an actual possession of the *locus in quo*. This, according to all the testimony adduced in the case, resided solely in Monroe and his wife, and those under whom she claimed, from the death of the original owner, James Greenfield, down to the time of the institution of the present action. And the acts of user and ownership set forth in the record are neither of the proper character, nor are they sufficiently connected in point of time to found a title by adverse possession. *Sorber vs. Willing*, 10 *Watt's*, 141; *Royer vs. Benlow*, 10 *S. & R.*, 305; *The Mayor, &c., of Phila., vs. Riddle*, 25 *Penn.*, 263; *Slater vs. Jepherson*, 6 *Cush.*, 129; *Lane vs. Gould*, 10 *Barb.*, 254.

As there is no evidence in the record legally sufficient to show a title in the appellant, so we submit that there is none to establish a title in any one else under whom the said appellant might justify. It is true that an effort was made by Hale in this direction, evidence being introduced on his behalf to show an outstanding title in other parties, but this, we submit, was not competent for the purpose. It consisted of two papers: 1st, A deed from Micaijah Greenfield, the eldest son of James Greenfield, the grandfather of the wife of the appellee, executed upon the 12th of February, 1785. And 2d, The last will, with the probate thereof of a certain Aquila Hall, attorney, made upon 20th February, 1815. The first purports to be an instrument of writing, transferring for the

Hale *vs.* Monroe.

sum of twenty pounds, a tract of land called "Trueman's Acquaintance," (of which the *locus in quo* formed a part,) to the said Hall; and the second, amongst other devises, gives a part of the same tract to a certain Robert L. Hall, son of the testator, in trust, for several uses therein particularly designated.

But with reference to this evidence, it is submitted:

1st. That the deed of Micaijah Greenfield was void, and that, therefore, Aquila Hall had no title to "Trueman's Acquaintance" at the time when he made his will. The deed in question was not executed until 12th of February, 1785: but upon the 28th of November, 1779, the will of James Greenfield, the father of the grantor, and who is admitted to have been the original owner of the *locus in quo*, was proved before the proper Court. This will devised the tract abovementioned, 1st, to the wife of the testator during her widowhood; 2d, it made certain provisions contingent upon the event of her marriage; and lastly, after her decease, it required the whole land to be sold and the money to be equally divided among the testator's children.

If then, there is competent evidence in the record to enable the appellee to set up this will, it is clear that the documentary evidence introduced by the appellant cannot have the effect for which it was offered, because this Court must then adjudge that Greenfield had no title at the time of the execution of the deed to Hall. The evidence to establish this will was excepted to by the appellant, and, we admit, that there are some defects in the certificate of probate, but, we contend that, looking to the presumptions which the charity of the law always extends to ancient documents and to the acts of official persons, the defects or omissions in question are of such a nature as will be supplied *ut res magis valeat quam pereat.* Owens *vs.* Collinson, 3 G. & J., 39; Hall *vs.* Gittings, 2 H. & J., 121, 122; Smith's Lessee *vs.* Steele, 1 H. & McH., 419; Rex *vs.* The Inhabitants of Catesby, 2 B. & C., 820; Select Cases, 254; Brown, et al., *vs.* Wood, et ux., 17 Mass., 72;

Hale *vs.* Monroe.

*Welty & Wife vs. Welty, exc'r of Hornaker*, 8 *Md. Rep.*, 15; *Bond vs. Seawell*, 3 *Burrows*, 1775; *Kelly vs. Jackson*, 6 *Peters*, 631.

It should be borne in mind, in this connection, that Monroe and his wife, and her ancestors, were in possession of the *locus in quo* over seventy years previously to, and at the time of the institution of the present suit. But, again, supposing the will and deed above mentioned to be operative, we cannot see that they can have any effect upon the questions before this Court, because, the will of Hall gives to his son Robert, as trustee, only a *part* of "Trueman's Acquaintance," and there is no evidence in the record to show that this particular part included the *locus in quo*, nor indeed, in any way to locate the same.

But giving all the effect to this will for which the appellant can contend, we do not see how his case can be thus bettered.

As he has no title in himself, he must justify as the agent of those who had title. Granting that these are they, who, took according to the devises of the said will, and not the representatives of James Greenfield, what evidence is there in the record to show that the appellant in removing the north fence, acted as the authorized agent of the devisees in question? We confidently submit that there is none whatsoever, not only bearing upon this point, but none even to show that he had authority to act as their agent in any matter concerning themselves or their property. Not having title in himself, therefore, to the *locus in quo*, and failing to show that in removing the north fence, he acted in accordance with the instructions of any one who had, he has produced before this Court, no justification of the alleged act of trespass.

5th. That part of the plaintiff's prayer is right, which leaves the amount of damages to the discretion of the jury. *McTavish vs. Carroll*, 13 *Md. Rep.*, 429.

6th. Besides the exceptions to the granting of the appellee's prayers and the admission of the certificate of probate as evi-

dence of the will of James Greenfield, the appellant relies upon two other bills of exceptions. After the plaintiff had closed his case, the defendant pretended to have evidence to show that Mrs. Keziah Dilworth, the mother of Mrs. Monroe, the wife of the plaintiff, had made declarations disclaiming any rights to the property in dispute, and offered to produce the same, and also pretended to have and offered to produce other testimony to the effect that he and the persons under whom he claimed had held exclusive, &c., possession by enclosure of the *locus in quo* for more than twenty years, and also that he and they had exercised acts of user over the same. To the admission of this testimony, the defendants objected, and their objection was sustained by the Court. It is submitted:

That the evidence in question was not, in its nature, rebutting.

That the defendant had already proved by a competent witness, whose testimony was not impeached, declarations of Mrs. Dilworth, tending to show that she had no rights in the *locus in quo.* She was not, therefore, entitled to further testimony upon this point after the plaintiff had closed his case.

That he was not entitled to show after the case had been closed, an adverse possession by enclosure on his part, and the part of those under whom he claimed, of over twenty years duration, because, one of his own witnesses had previously testified, that the land in controversy "was *open* on two sides till about sixteen or seventeen years" prior to the commencement of the present suit. *Armstrong vs. Risteau's Lessee,* 5 *Md. Rep.,* 257.

STEWART, J., delivered the opinion of this Court.

The record, in this case, shows that the appellee instituted an action of trespass *quare clausum fregit,* in the Circuit Court for Baltimore county, against the appellant, who pleaded "not guilty" to the same. An agreement was made by the parties, that the appellant, under that plea, might make any defence

which could have been specially pleaded; and the appellee, could offer in evidence, whatever might be introduced, upon any replication to such plea.

In the progress of the case, it was removed to Howard county, and at the trial, there was testimony on both sides, and chiefly, as to the possession and occupancy of the *locus in quo*, by the respective parties. The evidence was conflicting, and might have proved a mixed possession, not exclusive on either side, according to whatever estimate the jury might have placed upon it. The action of the Court below which we are required to review, relates to the several propositions, embraced in the four exceptions, taken by the appellant; we will consider them in the order of their occurrence.

In the first exception, the appellee having proposed to introduce, as matter of evidence on his part, a paper writing purporting to be the last will and testament of James Greenfield, dated 1st of February, 1779, and certified to by the register, the 28th November, 1779, the appellant objected to its admissibility. The Court overruled the objection, and permitted the same, with the accompanying certificate of the register, to be given in evidence to the jury.

This document, not having the requisites prescribed by the Statute of Frauds, for the purpose of devising real estate, was not admissible for that purpose; nor can such a probate, made before the Register of Wills, give to it validity and effect, as the last will of James Greenfield, to transfer his real estate; nor can such a paper, nor such probate, from any lapse of time, be effectual to that extent.

The Act of 1715, ch. 39, which confers power on the probate Judge " to take probate or cause to be proved, any last will and testament, although the same concerns title to land " did not dispense with the requirements of the statute of 29th Charles II; but authorized him to proceed according to the laws of England, in force in the colonies. He was directed strictly to pursue the provisions of law, in taking probate of a will.

The paper writing, offered in this case, is not proved to have been attested by three witnesses, nor does the certificate of the register, or probate, show that the provisions of the Statute, were complied with, in this respect. No presumption from its age, and the fact of its having been recorded, in the office of the Register of Wills, and the proof certified to in regard to it, can make it effectual as a last will and testament, by which to dispose of real estate.

To admit such an instrument with its apparent imperfections, referred to, as a competent and operative last will to transfer real estate, required to be made and attested under the Statute, with very precise and formal solemnity, would be in palpable violation of the law, and utterly subversive of the safeguards which its express provisions, its genius and policy, emphatically prescribe. In the case of *Rhodes, et al., vs. Vinson, et al.,* 9 *Gill,* 171, the Court say, " the policy of the law, has thrown around last wills, as many if not more shields to protect them from frauds, imposition and undue influence, than any mode of conveyance known to the law ; " " can there be a doubt, in cases like the present, where the object is to establish the contents of a paper which has been destroyed, as and for a last will, that policy requires the contents of such paper to be established by the clearest, the most conclusive and satisfactory proof?"

In the case of *Hall vs. Gittings,* 2 *H. & J.,* 112, referred to by the counsel for the appellee, where the will of George Holland was in question, the facts were very different from those relating to the instrument now under consideration. That will, made in 1683, was proved by an exemplification taken from the records of the Prerogative Office. It professed to have been "signed, sealed and delivered in presence of" three witnesses. It was proved by one of the witnesses, that the testator signed, sealed and delivered the same as his act and deed. Another witness proved her mark as a witness, and that the other witness was dead. It was not the case of a lost will, or of a true or imperfect copy, that had been recorded.

We think the Court went quite far enough in that case, and do not consider ourselves authorized to extend the indulgence, or allow the doctrine of presumption to go beyond the verge of that case. Whilst we recognize its authority where there is a similar state of facts or proof, we cannot permit ourselves, by charitable construction to be given to ancient documents, to disregard the plain and imperative mandates of the law. We reverse the ruling of the Court, in permitting this paper writing to go to the jury as matter of evidence.

In our opinion the Court below erred in its ruling on the point involved in the appellant's second exception, and the testimony, proposed by the appellant, ought to have been admitted.

The appellee having given in evidence the will of Keziah Dilworth, which was new matter on his part, the appellant was entitled to introduce testimony of declarations made by her, as to the extent of her claim, not for the purpose of proving title, but to rebut any influence the production of her will might have had upon the minds of the jury, by showing that she never claimed any interest, in the *locus in quo*. Such evidence was strictly rebutting, and not obnoxious to fair objection, to meet the case presented on the other side.

It is unnecessary to say more as to the third exception, than to remark, that as this case will be remanded, the evidence proposed to be offered by the appellant, which was objected to as not being properly rebutting, at the time, he will have the opportunity to introduce as testimony in chief.

The ruling on the fourth exception, granting the appellee's first prayer, must be reversed, because, we have decided, the probate of the alleged will of James Greenfield, was not admissible, and the jury could not, therefore, presume the existence of any will. The instruction was also erroneous, in confining the attention of the jury, to the question as to the possession of the appellee, without permitting them to consider the character of all the evidence on both sides, as

to the possession which was involved in controversy, by reason of the evidence, tending to show a mixed possession, and that the possession of the appellee was not exclusive, which it was necessary should have been established by him, as this prayer relied solely upon his claim by possession at the time he alleges the invasion of it occurred.　The exclusive character of the possession was a fact to be found by the jury.　If they so believed, from all the evidence, such a possession would have been sufficient to authorize them to find for the appellee, in this action, if no valid title to the *locus in quo* had been proved on the other side.

The second prayer would have been unobjectionable, but for the defects referred to in the first prayer, the facts in which are incorporated in it.

*Judgment reversed and procedendo ordered.*

(Decided 3d February, 1868.)