# BERNARD F. TINNAN.

*vs.*

# MARGARET E. FITZPATRICK.

*Lost will*: *proof of execution.*
*Wills*: *execution; proof.   Declara-*
*tions of decedent*: *in-*
*sufficient.*

Proof by a witness that a certain will was executed in his pres-
ence, and that it was signed by both witnesses in his office,
but not stating that the witnesses signed the will in the pres-
ence of the testator, fails to establish the attestation of the
will in accordance with the requirements of the statute. p. 348

Where an executor, who claims as the sole beneficiary under a
will, deliberately withheld it (for over eleven years) until the
attesting witnesses were all dead, and then, after the will had
been destroyed by fire, offered for probate what purported to
be a copy of the will, it was *held,* that the testimony of the
executor and the evidence produced by him was not sufficient
to show that the will alleged to have been executed was sub-
scribed and attested by the testator and witnesses as required
by law.                                    p. 353

The declarations of a decedent are not sufficient to establish the
execution of his will.                      p. 353

*Decided April 10th, 1913.*

Appeal from the Orphans' Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George W. Lindsay* and *R. B. Tippett,* for the appellant.

*Joseph C. Judge* and *Robert Biggs,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

On the 24the day of May, 1912, the Orphans' Court of Baltimore City, on the motion of Margaret E. Fitzpatrick, passed an order requiring the sheriff to summon Bernard F. Tinnan to appear and show cause why letters of administration on the estate of James Tinnan, deceased, should not be granted to her. In response to this citation Bernard F. Tinnan appeared and alleged that James Tinnan did not die intestate, but that he left a last will and testament in which he was appointed executor. On the same day he filed a petition in said Court alleging that the said James Tinnan, at the time of his death owned two pieces of "leasehold·property" in Baltimore City, and that he died in 1892 leaving a widow, Anna Tinnan, and the said Margaret E. Fitzpatrick and the petitioner, his children, as his only next of kin and heirs at law; that James Tinnan, in May, 1889, executed a will "in due form of law" and "duly attested by two subscribing witnesses," which was prepared by and executed in the office of James H. Smith, an attorney at law of Baltimore City and his personal friend, and subscribed to by John A. Codori and B. Frank Knight, both of which subscribing witnesses are now dead," that by said will the deceased left his

said daughter the sum of ten dollars, and devised and bequeathed all the rest and residue of his estate to the petitioner, with the request that he support the widow of the deceased during her natural life; that the deceased handed said will, on the day it was executed, to the petitioner who retained possession of it until the death of the deceased, and that after his death the petitioner's mother, in order to avoid any unpleasantness in the family that might result from the fact that the deceased only gave his daughter ten dollars, requested him not to file the will during her life, but to leave it "for safe keeping" at the home of John A. Codori, to whom the deceased owed a debt of $450.00, which was afterwards "paid off" by the petitioner; that in compliance with his mother's request the petitioner gave the will to John A. Codori who put it in his iron safe where it remained until 1902, after Codori's death, when it was delivered to the petitioner by Catherine A. Codori, his widow, and was then placed by the petitioner in the safe of Mr. Robert A. Carr, whose office was in the Law Building, and that it remained in Mr. Carr's safe until the fire of the 7th of February, 1904, when the Law Building and the safe were destroyed by fire; that his mother died on the 30th of September, 1903, and that he was so "distressed over" her death that he "did not promptly—go to Mr. Carr's office and get the will for the purpose of having it probated," but intended to do so within a reasonable time, and that the fire came before he had taken any steps to "probate the will;" that after the fire he did not know what his rights were, that he "was so completely upset that he did not ask the advice of counsel and did not know what ought to be done until recently," and that he "did not do anything;" that about two years before the filing of said petition his sister "requested him to inform her about the property left by her father and he then told her there was a will and told her all about it;" that he knew the contents of the will, both of the witnesses to the will and the signatures of said witnesses; that James H. Smith is likewise "Fully informed as to the contents of said will," and that he, the

petitioner, filed with his petition "a paper being a substantial copy of said will, it being absolutely in conformity with the exact devises and bequests as contained in said original will." The petitioner then prayed the Court to admit to probate, as the will of James Tinnan, said copy of his will, which is as follows:

### "WILL.

"I, James Tinnan, of Baltimore City, in the State of Maryland, being of sound and disposing mind, memory and understanding, do make this my last Will and Testament in manner following, that is to say:

After the payment of my just debts and funeral expenses, I give, devise and bequeath my estate as follows:

Item 1. I give and bequeath unto my daughter, Margaret E. Fitzpatrick, wife of Matthew J. Fitzpatrick, the sum of ten ($10.00) dollars.

Item 2. I give, devise and bequeath unto my son, Bernard F. Tinnan, all the rest and residue of my estate of whatever kind and wheresoever situate, it being my desire that my said son shall provide a comfortable home for my wife, Anne Tinnan, during her natural life.

I hereby constitute and appoint my said son, Bernard F. Tinnan, as the executor of this my last Will and Testament.

In witness whereof, I have hereunto subscribed my name and affixed my seal this ——— day of May, 1889.

JAMES TINNAN. (Seal).

Signed, sealed, published and declared by the above named Testator as and for his last Will and Testament in the presence of us, who at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses.

JOHN A. CODORI.<br>B. FRANK KNIGHT."

In her answer to the petition, Margaret A. Fitzpatrick denied that James Tinnan executed a will, and charged that the petitioner had been guilty of gross laches and should not be allowed to set up the alleged will. Evidence was produced in the Orphans' Court to prove the alleged will, and that Court at the conclusion of the testimony, and after argument of counsel, decided that the will had not been established, and passed an order dismissing the petition. From that order this appeal was taken.

At the trial the appellant read the paper filed with his petition as a copy of the will, and for the purpose of establishing the execution and contents of the original will, produced James H. Smith, Esq., who, after stating that he had known James Tinnan for about thirty years before his death, that he prepared his will, that he had known him intimately for a number of years, and that he had frequently consulted with the witness about "certain things," then testified as follows: "He came in a day or two before the will was prepared and said that he wanted to make a will, and he spoke of the circumstances. He said his wife was getting old and he wanted her to be——. He asked me if I would prepare the will for him. I told him, yes, I would, and I asked him what property he had, and he outlined what disposition he wanted to make of it. He spoke of his son, who was then keeping a small store in connection with the house where he lived. He said his daughter was married and well provided for, and he said, I will have to mention her name; and I said, if you want to. Then he told me he wanted to leave her ten dollars and that the balance of the property he wanted to leave with his son and he wanted him to take care of his mother and provide a home for her. He said she must have a home, and he wanted a home for her, and he said he was coming the next day; and I said, well, you will have to have witnesses. He said, yes; he would have the two witnesses there; and he came in but the two witnesses came before he did, they had been notified, and I read the will over to him

and he said that was just what he wanted, the balance of the property was to be left to his son and that they were keeping a store and if anything should happen to him, they would be provided for; and he talked to me intimately about the matter because I had known him so well and had talked with him about other matters; and I drew the will and I never heard of it after that until this suit was instituted.

Q. Mr. Smith, who were the witnesses to the will? A. The witnesses were Mr. John A. Codori and the other was Benjamin Franklin Knight. Mr. Codori I haven't much acquaintance with, I knew him by sight, but Knight I knew well, we were school-boys together; and he named the witnesses himself. Q. Was the will executed in your presence, sir? A. Yes. Q. Where was the will signed by the witnesses? A. Signed in my office at 11 E. Lexington street. Q. Signed by both witnesses? A. By both witnesses? Q. The petition filed in this case places the execution of the will May, 1889. What is your recollection of that? A. What is that? Q. Do you recall what year it was? A. I do not. I was trying to fix it after the case came up; it was about twenty years ago.

It is not necessary to refer to the testimony of Mr. Smith on cross-examination from which it appears that his recollection of other matters of business that occurred about the same time the alleged will was executed is very indistinct, or to the testimony of Mr. Judge that when he asked Mr. Smith if he had any independent knowledge of the contents of the will, "He said, Oh, no; Mr. Judge, I have forgotten all about business transactions that far back, but when Mr. Carr and Mr. Tinnan came to my office and told or read to me the contents of this paper, it refreshed my mind, and I remembered that was about what was in the will." The testimony we have set out above, and the testimony of Bernard F. Tinnan, to the effect that he had seen the will, knew the signatures of his father and of John A. Codori and B. Frank Knight, that their signatures were "on the will," and that Codori and

Knight are now dead, is all the evidence produced to prove the execution of said will.

Section 310 of Article 93 of the Code of 1888, which is the same as section 323 of the Code of 1912, provided that, "All devises and bequests of any goods, chattels or personal property of any kind, as described in section 307, shall be in writing and signed by the party so devising or bequeathing the same, or by some other person for him, in his presence and by his express direction, and shall be attested and subscribed in the presence of said deviser by two or more creditable witnesses, or else they shall be utterly void and of no effect." This section expressly provides that the will shall be attested and subscribed by two witnesses in the *presence* of the testator, and there is not a word in the testimony to which we have referred to show that the witnesses signed their names as witnesses in the *presence* of James Tinnan. Mr. Smith states that the will was *executed* in *his* presence, and that it was signed by both witnesses in his office, but he does not state that the witnesses signed the will in the *presence* of the testator, and his testimony, therefore, fails to establish the attestation of the will in accordance with the requirements of the statute. *Stirling* v. *Stirling,* 64 Md. 138.

It remains to be determined what effect and weight should be given to the testimony of Bernard F. Tinnan that he knew the signatures of the deceased and Codori and Knight and that their signatures were "on the will," for unless this evidence is sufficient to establish the due execution and attestation of the alleged will, the Orphans' Court very properly refused to admit the copy to probate. Section 350 of Article 93 of the Code of 1912 declares that "In proving a will or codicil all the witnesses thereto shall be examined if their attendance can be had," and section 353 provides, "If any witness or witnesses to any will shall die before probate thereof, or if at the time of the probate of any will any witness or witnesses shall be non-residents or beyond the jurisdiction of the Orphans' Court, or if for any other reason

their presence can not be secured, then proof by any credible witness of the signature of the testator or of the signature of any such deceased or absent witness shall have the same effect upon the probate of said will as if said deceased or absent witness had been present at said probate and had testified that said will was duly executed." These sections, which only apply to wills that are produced and offered for probate, require all the witnesses to the will to be examined except in cases where a witness is dead or his "presence can not be secured," in which case proof by any credible witness of the signature of the testator or absent witness has the effect stated in the latter section. The same general principle is said to apply ordinarily to the proof of the execution, etc., of a lost or destroyed will. It is stated in 40 *Cyc.* 1295: "In a proceeding for the probate or establishment of a lost or destroyed will, compliance with all the formalities of execution required by law must be shown just as if the writing itself were produced before the Court. This proof should be made direct evidence, that is, by the testimony of the subscribing witnesses, where their testimony is procurable. If the subscribing witnesses are dead, or for any other reason their testimony is not procurable, resort may be had to secondary evidence." But the record before us presents an unusual and extraordinary case. There is no evidence to show that the witnesses to the will were dead at the time of James Tinnan's death, or that they died a short time thereafter. On the contrary it appears that John A. Codori did not die until nearly two years later. So far then as the record shows there would have been no difficulty in securing the testimony of the witnesses if the will had been offered for probate within a reasonable time after the death of the deceased. Instead of doing so the appellant, the executor and practically the sole beneficiary under the will, withheld it for more than eleven years. This he explains by stating that he did it at the request of his mother "not to file said will during her life," in order that she might avoid any unpleasantness in the family that would probably result from the provisions of the

will. But the will was not destroyed by fire until more than a month after his mothers death, and notwithstanding he had been advised by Mr. Carr "that the law required that this will should be probated" he took no steps in the meantime to have it admitted to probate, and not until eight years after her death, and until he was required to show cause why letters of administration on his father's estate should not be granted to his sister, did he make any effort to establish said will. Under such circumstances the policy of the law requires something more than the proof by this witness of the signature of the testator and the attesting witnesses in order to establish the execution of the will. It would be a dangerous precedent and one calculated to defeat all the safeguards that the law has thrown around the execution of wills by opening the door to fraud and imposition, to hold that an executor who is the sole beneficiary under a will can deliberately withhold it until the attesting witnesses are all dead, and then after it is destroyed establish the execution of the will by his testimony that the signatures of the testator and the attesting witnesses were attached to the paper. In the case of *Rhodes* v. *Vinson,* 9 Gill, 169, where an attempt was made to prove the contents of a will which was alleged to have been destroyed by the testator when of unsound mind, the Court, in reversing the order of the Orphans' Court on the ground that the evidence was not sufficient, said: "We shall not stop to inquire as to proof of the capacity of the testator, at the time of the execution of the will, or of its legal attestation, but concede that both of these requisitions were legally gratified. We are first to inquire, whether the contents of the paper, which was destroyed are satisfactorily proved."

The policy of the law has thrown around last wills and testaments, as many, if not more, shields to protect them from frauds, imposition and undue unfluence, than any mode of conveyance known to the law.

Can there be a doubt, that in cases like the present where the object is to establish the contents of a paper which has been destroyed, as and for a last will, that policy does require

the contents of such paper to be established by the clearest, the most conclusive and satisfactory proof? We think not. In the case of *Hale* v. *Monroe*, 28 Md. 98, JUDGE STEWART, speaking for the Court, said: "The paper writing, offered in this case, is not proved to have been attested by three witnesses, nor does the certificate of the register, or probate, show that the provisions of the statute, were complied with, in this respect. No presumption from its age, and the fact of its having been recorded in the office of the Register of Wills, and the proof certified to in regard to it, can make it effectual as a last will and testament, by which to dispose of real estate."

"To admit such an instrument with its apparent imperfections, referred to, as a competent and operative last will to transfer real estate, required to be made and attested under the statute, with very precise and formal solemnity, would be a palpable violation of the law, and utterly subversive of the safeguards which its express provisions, its genius and policy, emphatically prescribe." After quoting from *Rhodes* v. *Vinson, supra,* JUDGE STEWART further said: "In *Hall* v. *Gittings,* 2 H. & J. 112, referred to by the counsel for the appellee, where the will of George Holland was in question, the facts were very different from those relating to the instrument now under consideration. That will, made in 1683, was proved by an exemplification taken from the records of the Prerogative Office. It professed to have been 'signed, sealed and delivered in presence' three witnesses. It was proved by one of the witnesses, that the testator signed sealed and delivered the same as his act and deed. Another witness proved her mark as a witness, and that the other witness was dead. It was not the case of a lost will, or of a true or imperfect copy, that had been recorded. We think the Court went quite far enough in that case, and do not consider ourselves authorized to extend the indulgence, or allow the doctrine of presumption to go beyond the verge of that case. Whilst we recognize its authority where there is a similar state of facts or proof, we can not permit ourselves, by char-

itable construction to be given to ancient documents to dis-
regard the plain and imperative mandates of the law. We
reverse the ruling of the Court, in permitting this paper
writing to go to the jury as matter of evidence." In the case
of *Bailey* v. *Stiles,* 2 N. J. Eq. 220, where the will had been
destroyed, the chancellor, after stating that the Statute of
New Jersey required the testator to sign his name in the
presence of the witnesses, said in reference to the testimony
of a subscribing witness: "As to the testators signing the will
in the presence of the witnesses, the deponent answers, he
does not recollect seeing him sign his name. He thinks the
testator's name was signed to the will when he first saw it.
This witness gives a very rational account of the whole mat-
ter, and makes out a complete execution of the instrument,
except as to the signing by the testator, and upon that point
he declares he has no recollection of seeing him sign his
name. This is the most difficult part of the case. The deci-
sion on this subject in the Supreme Court, requiring the tes-
tator to sign his name in the presence of the witnesses, I shall
adhere to as the law of this Court. The question belongs
peculiarly to that Court, and its decision must control this.
This witness, therefore, fails to make out an essential part
of the proof, and without further evidence the case must
fail." In the case of *Wyckoff* v. *Wyckoff,* 16 N. J. Eq. 401,
where the will was destroyed by the witness upon whose testi-
mony the legatees who filed the bill relied to establish the
contents of the will. The chancellor, after stating: "He who
voluntarily, without mistake or accident, destroys primary
evidence, thereby deprives himself of the production and use
of secondary evidence," held that the destruction of the will
by the witness had been satisfactorily explained, and that
his evidence was sufficient under the circumstances of that
case to establish the *contents* of the will. In the case of
*McKenna* v. *McMichael,* 42 Atl. Rep. 14, the Supreme Court
of Pennsylvania held, quoting from the syllabus, that "Evi-
dence of the contents of an alleged last will, relied on as a
revocation of a prior one offered for probate, is inadmissible

in the absence of evidence that it was executed in the presence of two witnesses, as required by statute." In the case of *Moore* v. *Whitehouse,* 34 Law Journal Probate, 31, where the will had been destroyed by the person whose testimony was relied upon to establish the execution of the will, the Court said: "The Court can not, after such evidence, pronounce for a paper not in existence, which is to be supported, if at all by the oath of the sole party interested, and who himself destroyed the original."

For the reasons we have stated we hold that the evidence produced by the appellant is not sufficient to show that the will alleged to have been executed by the deceased was attested and subscribed by the witnesses in his presence. In this view of the case it is not necessary to refer to the other questions presented by the record, further than to say that the declarations of the deceased would not have been sufficient to establish the execution of the alleged will. JUDGE MILLER said in *Hoppe* v. *Byers,* 60 Md. 381, that such declarations "are not to be taken as direct proof to establish the paper, but merely corroborative of such direct proof, or as a circumstance in a case of this character, where such direct evidence had been first given, proper for the consideration of the jury."

*Order affirmed, with costs.*