IN RE ESTATE OF AMY ELEANOR ELIZABETH
HULL; APPEAL OF ELIZABETH
CARTER HULL.

[No. 71, October Term, 1932.]

*Decided January 13th, 1933.*

The cause was argued before BOND, C. J., ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Harry E. Silverwood,* for the appellant.

PARKE, J., delivered the opinion of the Court.

Amy Eleanor Elizabeth Hull died on March 24th, 1931. Her niece, Elizabeth Carter Hull, had lived with her for many years until the aunt's death, when she went to the safe deposit box of her aunt at a local trust company, and removed from the box an envelope on which her aunt had written the words "my will," and in which the niece found a number of paper writings, which, for the purpose of consideration, have been separated in four groups.

The niece was advised that the paper writings were not testamentary, and, in that belief, she applied for and was granted letters of administration on March 30th, 1931. The administratrix then gave the envelope and its contents to a third party, and later was advised that the paper writings were operative as will and codicils. She then secured the return of the papers, but the envelope in which they had been discovered had been lost or mislaid, and she was unable to recover it, after a diligent and thorough inquiry and search. The paper writings were formally proffered for probate to the orphans' court, and proof was taken and a hearing had, and those of the paper writings which were executed in accordance with the provisions of the statute were admitted, and those which were not so executed were rejected. The appeal proceeds upon the theory that the rejected paper writings, although they were not properly executed, are nevertheless operative as testamentary papers because they are intrinsically a part of the paper writings which are in compliance with the statute.

The proof was that the decedent was a spinster, whose next of kin were two nieces of the whole blood, Elizabeth Carter Hull and Elizabeth Hull McKey, and a niece, Elizabeth Hepburn, and a nephew, Harry Hull, of the half blood. After stating the time of the death and the circumstances

attending the finding of the paper writings in the marked envelope, Miss Hull testified that a diligent search had been made to ascertain if a will or codicil of the decedent had been left, and nothing else in the nature of a will or codicil could be discovered. She further established that all the paper writings were in the handwriting of the decedent, and that the signatures were those of the decedent.

One of the parties named in the papers, Louise G. Hull, was shown to have died on May 31st, 1925, and Bessie Hepburn and Elizabeth Newport Hepburn were identified as the same person. The four subscribing witnesses to the paper writings which were admitted to probate testified and established the due execution of the two paper writings which have been admitted to probate. No further evidence was taken. The paper writings were considered in connection with the testimony, and the court passed its order. While the appeal is from the order as passed, the object of the appeal is to secure the probate of all the paper writings offered for probate.

I. The first group of paper writings consisted of six sheets, which fall into two divisions, of five sheets and one sheet. The five sheets are of the same kind of paper on which the decedent had written, entirely by her own hand, under the heading on the first sheet: "Instructions to Louise G. Hull, if she is alive at my death, or if she is not alive to Elizabeth McKey and Elizabeth Hull, my two whole nieces" how she wished her estate to be distributed at her death. The five pages are not numbered, but their sequence is clearly established by the context, and the names of the numerous beneficiaries, and articles, amounts, or shares given, are clearly expressed, and the whole is concluded by an unfinished sentence and the signature of the writer at the foot of the fifth page. The decedent had finished her direction where she was to be buried and had named the two persons who would attend to her interment in Staunton, when she wrote these six words: "I should like Baker & Lena's," which completed the line, but left the sentence to be finished on another sheet. The words "Baker & Lena's" have two parallel lines drawn

through them, but that the sentence was not ended is indicated by letting the three words beginning the sentence remain. Below this thus altered beginning of a sentence and on the verge at bottom of the sheet is only the unattested signature of the decedent. There is no date on these five sheets.

The sixth sheet is not a continuation of the fifth sheet, and is, therefore, to be separately considered. The paper writing does not begin with the conclusion of the sentence which the decedent commenced near the bottom of the fifth page. Moreover, in the sixth sheet the decedent allotted specific furniture and pictures to Elizabeth McKey and Elizabeth Hull only, and she gave to each articles which were similarly bestowed in the five sheets and some furniture, which, in the five sheets she distributed to Elizabeth McKey, she declared in the sixth sheet should fall to Elizabeth Hull. It is, therefore, manifest that the sixth sheet was not written as part of the five sheets, and that, while clearly not contemporaneous, there is nothing by way of date or otherwise, to indicate whether its writing was before or after the preparation of the five pages. In addition, there is nothing to establish when the disposition of the things named on the sixth sheet became effective, and its sole verification is that it is in the handwriting of the decedent and that she signed her name at the end of the page. The orphans' court rejected all these sheets, and refused to admit them to probate.

II. The remaining sheets are dated, and the first in order was executed on June 19th, 1929, and was signed by the decedent and has the two witnesses to her signature. On the proof of the factum of this paper as the decedent's testamentary act, the Orphans' Court of Baltimore City admitted this paper writing to probate, and there was no error in this action. This document creates a trust for $5,000, if that amount be left, and has the words "Codicil to my will" written immediately above the signature of the writer, but furnishes no information, description, nor other means of identification of the will to which it is a codicil.

III. The next paper writing is headed by its date June 14th, 1930. It does not in apt terms purport to be a will or codicil, but is in the form of a brief declaration that a named party has none of her property, and a vague statement in reference to money in trust, and then expresses the wish that Elizabeth McKey have her sapphire ring and the Hull pitcher, and a table in the parlor, and that Elizabeth Hull have the table in the hall, both tables having come from a named ancestor. Then follows the signature only of the decedent, without a witness. The orphans' court refused to admit this paper to probate.

IV. The final paper writing is begun by the date July 3rd, 1930. It is signed by the decedent, and there are two subscribing witnesses, who appeared at the hearing and duly proved the factum of this paper as the decedent's testamentary act. The orphans' court was therefore right in admitting this paper to probate.

By this testamentary paper the decedent merely revoked two gifts formerly provided in these words: "I wish to revoke my bequest of $300 to Bessie Hepburn simply because I have had to use so much of my capital, as I am very fond of her. Give her the little mirror in the parlor. Only give Mary Gavin $100 for the same reason & give her my bed & the forks marked G & anything else you want to. She has been very faithful."

Since the Act of 1884, ch. 293, Code, art. 93, secs. 332, 333, the statute law has been that all devises and bequests of real or personal property shall be in writing and signed by the party devising or bequeathing the same, or by some other person for him, in his presence and by his express direction, and shall be attested and subscribed in the presence of the testator by two or more credible witnesses, or else they shall be utterly void and of no effect. The paper writings on this record which were rejected as testamentary papers, although signed by the testator, did not have a single attesting witness, and by the statute were, therefore, made utterly void and of no effect. No decision of this court has ever attempted to modify this salutary legislative mandate. As was

stated in *Sewell v. Slingluff* (1881), 57 Md. 537, 548: "Wills are more especially guarded and protected by the law, than any other instruments. They are guarded in their inception by the formalities required by our statute, and after they are made, they are equally guarded by our statute, which points out the only mode by which they can be revoked or annulled." Code, art. 93, secs. 332, 333; *Western Md. College v. McKinstry,* 75 Md. 188, 23 A. 471; *Remington v. Metropolitan Savings Bank,* 76 Md. 546, 25 A. 666; *Preston v. Preston,* 149 Md. 498, 508, 132 A. 55; *Tinnan v. Fitzpatrick,* 120 Md. 342, 350, 87 A. 802; *Hale v. Monroe,* 28 Md. 98, 113; *Sellers v. Hayden,* 154 Md. 117, 140 A. 56.

It is a necessary consequence of the statute that the undated five sheets and the single sheet which form two of the paper writings, and the third paper writing, dated June 14th, 1930, which are in the handwriting of the decedent and subscribed by her, but without the attestation of two witnesses, are not admissible to probate as testamentary papers. *Supra.*

The proponent of these paper writings as testamentary papers does not argue that these several writings, when considered separately, comply with the statute, but it is insisted that, because the two paper writings, respectively of June 19th, 1929, and of July 3rd, 1930, are codicils and testamentary in nature, each was a republication of the will and thereby the other unwitnessed papers became valid as of the dates of the execution of the codicils and enforceable to the extent there was no conflict.

The principle invoked is thus stated in *Williams on Executors* (7th Am. Ed.), vol. 1, pp. 139, 140 (*86, *87): "Again, the authorities with respect to the Statute of Frauds appear to apply to the Wills Act, upon the question, whether an unattested will or other paper may be rendered valid as a testamentary disposition by being referred to and adopted by a will or codicil properly attested. These authorities have established, that if the testator, in a will or codicil or other testamentary paper duly executed, refers to an existing unattested will or other paper, the instrument so referred to

becomes part of the will. But the reference must be distinct, so as, with the assistance of parol evidence when necessary and properly admissible, to exclude the possibility of mistake; and the paper referred to must be already written." See 1 *Jarman on Wills* (6th Am. Ed.), 136-141 (103-109, star); *Theobald on Wills* (7th Ed.), 65-69; 30 *Am. & Eng. Ency. of Law* (2nd Ed.), 578; 40 *Cyc.* 1216, 1217; 28 *R. C. L. "Wills,"* sec. 64, p. 112; 28 *Halsbury's Laws of England,* 577, 578; *Woerner's American Law of Administration* (3rd Ed.), sec. 222, p. 747.

The principle is not universally recognized, but it was early applied in this jurisdiction. An illustration is found in *Needles v. Martin,* 33 Md. 609, where a testator by his will gave his wife a life estate in personal property and at her death a remainder to certain named persons living at the time of the life tenant's death. Simultaneously with the execution of the will, the testator executed another paper in the form of a letter of instructions to his beneficiaries, in which he declared that the property should be held in special trust, and the net revenue and proceeds thereof should be applied to the education of free colored people in the City of Baltimore; and also provided for filling any vacancy that might occur among the trustees. The will and the declaration of trust were then put in one envelope, upon which was indorsed that it was the party's will, and the papers were then deposited with the register of wills for safe-keeping. The position was taken that the paper, executed at the same time the will was, formed no part of the will itself, and was not a codicil to it. The answer of the court was expressed in these words: "In order to carry into effect his intention, after taking advice, two of the appellants had prepared the will and accompanying paper, both of which were executed at the same time and with all the formalities which the law requires to give validity to wills. They were intended to be taken and to operate together as one complete and entire disposition of his property, and, from the proof in the cause, we think it very evident that he never would have executed the one without the other. In this instrument is declared

the trust upon which the legatees are to hold the property bequeathed by the will, and in it is employed the same formal language that is used in the will itself; such as, 'it is my desire and will'; and we think there can be no doubt that the testator considered it a most essential and important part of his will, and executed it as such. The orphans' court did right in admitting it to probate and having it recorded with the will. It is executed with all the formality requisite to make it a valid declaration of the trust upon which the legatees were to take and hold the property bequeathed to them by the will." Page 617 of 33 Md. After deciding that the will and the letter of instructions together constituted the testator's will, the trust was declared void for uncertainty and as creating a perpetuity. See *American Colonization Soc. v. Soulsby,* 129 Md. 605, 614, 615, 99 A. 944; *Suman v. Harvey,* 114 Md. 241, 255, 256, 79 A. 197; *Latrobe v. American Colonization Soc.,* 134 Md. 406, 412, 413, 106 A. 858. In *Michael v. Baker,* 12 Md. 158, 170, it was held that an antenuptial agreement was erroneously admitted to probate, because it was not a testamentary paper and formed no part of the will. So, in *Church Extension M. E. Church v. Smith,* 56 Md. 362, 388, no question was raised by the disposition of chattels in accordance with a schedule annexed to the will. See *Miller on Construction of Wills,* 7, 8.

The rule is strictly applied with respect to the necessity for the incorporated paper to be so identified as to exclude the possibility of mistake, and to be in existence at the time of the reference, as is well illustrated by *Saylor v. Plaine,* 31 Md. 158, where an undated unattested instrument which was written by the testator and gave directions to his trustees with respect to the manner in which he desired them to dispose of his estate after the termination of the estate for life or during widowhood of his wife, and which was found among the widow's papers thirty years after the death of the testator, was, under these circumstances, rejected as not forming a part of the will and, therefore, embodying a valid declaration of trust. The court, however, recognized and stated the doctrine that, although not formally executed, the

paper would have become a part of the will if it had been shown to have existed at the date of the will and had been incorporated by reference. Pages 163, 165, 166 of 31 Md. Again, in *Chase v. Stockett & Ridout,* 72 Md. 235, 19 A. 761, a testatrix, who was not fully prepared to dispose of the residue of her estate among the various persons to whom she desired to leave legacies, bequeathed all the residue of her estate to her executors in trust that they might apply and pay over the same to such persons and objects as she might in writing direct and designate; her purpose, as she explained in the will, was to add a codicil disposing of this residue, and, in the meantime, she would give written directions to her executors in reference to the application and distribution of this residue. Shortly after the will was admitted to probate the executors found a written memorandum endorsed "for the instruction of my executors." This paper was in the handwriting of the testatrix and contained instructions to the executors with respect to the distribution of a large sum of money at her death, but it was not attested by any witness and was written two days after the will was executed. This court adopted the opinion of the chancellor as stating the law. This opinion was the work of Judge Oliver Miller, a distinguished jurist, who carefully examined the authorities, and found that the memorandum could not be incorporated into the will by reference, because it was not in existence at the date of the execution of the will. Pages 243-249 of 72 Md., 19 A. 763-765; *Trinity M. E. Church v. Baker,* 91 Md. 539, 565, 566, 46 A. 1020. See *Wilson v. Bull,* 97 Md. 128, 138, 54 A. 629.

It remains to apply this doctrine, under the rules controlling its application, to the paper writings of this record. The two instruments which were admitted to probate are codicils. The earlier one, of June 19th, 1929, is marked "Codicil to my will," and the subject-matter is the creation of a distinct trust, and the later one, of July 3rd, 1930, is a codicil because it revokes two bequests and, so, presupposes a will. Neither of these codicils was written on the same sheet with any of the rejected paper writings nor affixed in

any form to any one of them. Nor do either of the codicils refer to any other paper writing in a way that would make certain what paper writing was regarded as being the will of the decedent. There is no extrinsic or parol evidence to supply this deficiency and exclude a mistake. The circumstance that these loose, detached, unattested papers are found together in an envelope marked "my will" cannot supply elements which they lack, especially as the decedent knew two witnesses were necessary to her signature to make a disposition of her property by will, and, as it does not follow, because a formal will was not found in the envelope, that one had not been formerly kept there and been removed by the decedent. *Lungren v. Swartzwelder,* 44 Md. 482, 488. Compare *Shane v. Wooley,* 138 Md. 75, 113 A. 652.

In addition, the paper writing of June 14th, 1930, and the undated single sheet, whose time of execution is unknown, do not purport to be of a testamentary nature. They contain no word that would indicate they were intended to be either will or codicil, nor anything which would determine whether they were memoranda of gifts *in praesenti* or of gifts which were not to take effect until the owner's death. *Lungren v. Swartzwelder,* 44 Md. 488, 489.

The paper writing of five connected sheets is designated "instructions," but it is testamentary, as it clearly confers no interest *in praesenti,* is revocable at pleasure, and is not to take effect until the death of the writer. While it is undated, and the time of its writing is unknown, the fact that the instructions run to Louise G. Hull, who died on May 31st, 1925, under circumstances which would give the decedent this knowledge, indicates that these sheets were written before that date, and hence, before the execution of the two codicils. So, this paper writing was in existence before either of the codicils, but that fact is not enough to identify the writing as the will to which the codicils were drawn, in the absence of any direct, clear, and explicit reference in the codicils to this paper writing; nor can the failure to discover a will which would answer the tests of the codicils justify the substitution of another instrument that would not

fulfill the definite descriptive terms of the codicil. The absence of the will raises the presumption that the testamentary paper has been destroyed by the testator *animo revocandi,* and that the codicils remaining complete the testamentary intentions of the decedent. *In the Goods of Greig,* L. R. 1 P. & D. 72; *Dickinson v. Stidolph,* 11 C. B. (N. S.) 341, 142 Eng. Reprint, 828.

Moreover, the codicils furnish convincing evidence that the five sheets are not the will in the mind of the testator. She had reference to a will, which is a complete testamentary paper with the signature of the maker attested by two witnesses. The fifth page ends in an uncompleted sentence, with her signature below, but with no attesting witnesses. The purporting paper is, therefore, apparently, an unfinished document, with no testimony to explain its abrupt end nor to show it was in its final state and that the maker had accepted it as her will. *Byers v. Hoppe,* 61 Md. 206, 212,

There is intrinsic evidence furnished by the codicil of July 3rd, 1930, that the testator did not have in mind the paper writing of five sheets. In the codicil the writer wrote: "I revoke my bequest of $300 to Bessie Hepburn," so the will she had in mind and whose legacy she intended to revoke had provided a legacy for the legatee in that amount; and, consequently, she could not have referred to the paper writing of five sheets, because the legacy given by her in those sheets was $500. Again, she wrote: "Only give Mary Gavin $100 for the same reason & give her my bed & the forks marked 'G' & anything else you want to," when in the paper writing of five sheets Mary Gavin had been given $200 and twelve forks marked with G.

After weighing the scant parol testimony on this record in connection with the paper writings for which probate is sought and the principles which must inform the judgment, the conclusion is clear that the order of the orphans' court gave effect to the full testamentary intention of the testatrix, as legally effective under our statutes.

It is of great public importance that the integrity of testamentary papers be maintained by not extending the excep-

50

tional instances when papers existing at the date of the will or codicil may, by specific reference and clear description and certain identification, become incorporated in a testamentary document. In no other way will fraud and perjury in the propounding of wills for probate be so effectually restrained. *Chase v. Stockett,* 72 Md. 248, 19 A. 761.

*Order affirmed, with costs to be paid by the appellant.*